UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-421T |
| | ) | |
| NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**OBJECTION TO MOTION TO DISMISS**

Plaintiff Lifespan Corporation hereby files its Objection to Defendants' Motion to Dismiss for lack of personal jurisdiction.

A Memorandum of Law and the Affidavit of Kenneth E. Arnold, Senior Vice President, General Counsel and Secretary of Lifespan are filed herewith.

LIFESPAN CORPORATION

By its attorneys,

/s/ Deming E. Sherman

Deming E. Sherman (#1138)
Patricia A. Sullivan (#2120)
Jon M. Anderson (#3946)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

October 16, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of October, 2006, a copy of the within Objection was sent by electronic means (ECF) to the following counsel of record:

David A. Wollin, Esq.
dwollin@apslaw.com

/s/ Deming E. Sherman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-421T |
| | ) | |
| NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION TO DISMISS**

Plaintiff Lifespan Corporation hereby files its Objection to Defendants' Motion to Dismiss for lack of personal jurisdiction.

**Background**

The Complaint arises out of the separation of defendants New England Medical Center, Inc. ("NEMCI") and New England Medical Center Hospitals, Inc. ("NEMCH") (collectively "NEMC") from Lifespan Corporation ("Lifespan"). On September 30, 2002, the parties, which had been affiliated since 1997, executed a Restructuring Agreement that gives rise to Lifespan's claims. Under the Restructuring Agreement, the defendants agreed to make payments to Lifespan in the total amount of $3.66 million in January 2006 and January 2007. NEMC refused to make the payment in January 2006 and indicated that it refuses to make the payment in January 2007. As a result, Lifespan filed the Complaint to collect the sums that clearly are due.

NEMC now claims that this Court has no personal jurisdiction over it.[1] As is obvious from the face of the Complaint and as is abundantly clear from the law and the facts set forth in the Affidavit of Kenneth E. Arnold, Senior Vice President, General Counsel and Secretary of Lifespan, this Court has personal jurisdiction over NEMC.

**Statement of Facts**

As set forth in the Affidavit of Kenneth E. Arnold:

Lifespan is a Rhode Island corporation with its principal office located at 167 Point Street, Providence, Rhode Island. It is a holding company and supporting organization for several affiliated hospitals, including Rhode Island Hospital in Providence, Rhode Island. In October 1977, Lifespan and New England Medical Center, Inc., parent of New England Medical Center Hospitals, Inc., (collectively "NEMC") entered into an Amended and Restated Master Affiliation Agreement ("Affiliation Agreement") pursuant to which Lifespan and NEMC and their respective affiliates agreed to operate as a single health care system under Lifespan as a common parent. One of the stated purposes of the Affiliation Agreement was to "build together a healthcare delivery system to serve New England . . ." The affiliation came about after NEMC contacted Lifespan in Rhode Island about such an arrangement.

The affiliation continued until September 30, 2002, when the parties entered into a Restructuring Agreement, and related agreements, pursuant to which NEMC disaffiliated from Lifespan due to changing economic conditions, including changes in the managed care market in Rhode Island and Massachusetts. The Restructuring

---

[1] On the same day that NEMC filed its Motion to Dismiss, it filed a Complaint in the Suffolk County Superior Court in Massachusetts against Lifespan and a related entity, Lifespan of Massachusetts, Inc., claiming breach of contract breach of fiduciary duty, among other claims, related to the affiliation, claims that would otherwise be the subject of a compulsory counterclaim in this case. C. A. No. 06-4089-C. Because there is no diversity of parties in that case, Lifespan cannot remove the case to federal court and seek consolidation with this case.

Agreement provides that "the parties desire to restructure the Affiliation and operate independently from one another" (p. 1). Complaint Ex. A.

The Restructuring Agreement that gives rise to the Complaint was negotiated for Lifespan by George Vecchione, the President and CEO of Lifespan and by Kenneth E. Arnold, Senior Vice President, General Counsel and Secretary. The representatives of NEMC were led by the Chairman of NEMC's Board, Malcolm Sherman, who at the time was on the Board of Lifespan, and who, among others, made phone calls to Messrs. Vecchione and Arnold in Rhode Island and attended meetings in Rhode Island to negotiate the Restructuring Agreement. The other primary representative of NEMC in the negotiation was Thomas F. O'Donnell, M.D., President of NEMC.

During the period of affiliation, the parties' operations were intertwined with and dependent upon one another. On a daily basis, there were numerous contacts between Lifespan personnel in Rhode Island and NEMC personnel in Boston by phone and in person. NEMC representatives both called Lifespan personnel in Rhode Island and attended meetings with Lifespan personnel in Rhode Island.

Between 1997 and 2002, the affiliation period, Lifespan had a Board of Directors. The Board of Directors met regularly at Lifespan's facilities in Rhode Island that included Rhode Island Hospital.

George Vecchione, a Rhode Island resident whose office was in Rhode Island, was CEO of Lifespan and between 1998 and 2002 was an *ex officio* member of the Board of Directors of Lifespan.[2]

[2] He continues to serve in these offices.

After the affiliation, Lifespan of Massachusetts, Inc., a subsidiary of Lifespan, served as the sole voting member of NEMCI and NEMCH, both Massachusetts corporations. As part of the affiliation, those persons serving from time to time as the members of Lifespan Corporation's Board of Directors also served as the Members of Lifespan of Massachusetts, Inc. NEMC also had a Board of Trustees whose members were elected by Lifespan of Massachusetts, Inc.

Throughout the affiliation period, the Chair of the Lifespan Board of Directors served as a trustee of NEMC, *ex officio*. The Chairman of the NEMC Board at the time of the Affiliation Agreement, George Carmany, executed the Affiliation Agreement on behalf of NEMC and served as a vice-chairman of the Lifespan Board from 1998 to 2001, attending meetings in Rhode Island. In addition, and in accordance with the terms of the Affiliation Agreement, a number of other persons who were either Trustees of NEMC or who were physicians working at NEMC served from time to time on the Lifespan Board of Directors. These included: Walter M. Cabot, Sr.; Jill Ker Conway, Ph.D; H. Jay Sarles; Stanley Shapshay, M.D.; John F. Rockart, Ph.D.; Norman Stearns, M.D.; and N. A. Mark Estes, III, M.D. These directors attended meetings of Lifespan's Board of Directors in Rhode Island approximately ten times per year.

George Carmany, Chairman of the Board of Trustees of NEMC at the time the Affiliation Agreement was executed, served on the Lifespan Board and its Finance Committee from 1997 until 2002. Malcolm Sherman succeeded Mr. Carmany as Chairman of NEMC. Mr. Sherman served on the Lifespan Board of Directors from 2000 through the end of the affiliation period; he served on Lifespan’s Finance Committee during that time; and he executed the 2002 Restructuring Agreement on behalf of NEMC

while serving as a Director of Lifespan. Both attended meetings in Rhode Island from time to time.

The 2002 Restructuring Agreement contained a provision that the NEMC trustees and physicians would resign as Lifespan Directors. Prior to that time they were involved in the business of Lifespan.

The Affiliation Agreement provided that every standing committee of the Lifespan Board of Directors would include in its membership at least one individual who had served on the NEMC Board of Trustees immediately prior to the affiliation. These committees met from time to time in Rhode Island.

By the terms of the Affiliation Agreement, the President and CEO of NEMC, Thomas F. O'Donnell, Jr., M.D., remained in office; however, he reported to William Kreykes, who was President and CEO of Lifespan in Rhode Island. He reported to the incumbent President and CEO of Lifespan throughout the affiliation period. The terms of the Affiliation Agreement granted the President and CEO of Lifespan the authority to remove the President of NEMC. The President of NEMC regularly attended management meetings and Board and Committee meetings in Rhode Island. The President of NEMC met regularly with the President and CEO of Lifespan, either in Rhode Island or by phone.

Following the Affiliation Agreement, NEMC merged its offshore captive insurance company operations into Lifespan Corporation's offshore captive insurance company. Throughout the period of affiliation, there was a single captive insurance company serving all of the Lifespan affiliates both in Rhode Island and Massachusetts. On-shore servicing and claims management were provided by Lifespan Risk Services, Inc., a Rhode Island corporation. The claims manager for Lifespan Risk Services, Inc.,

had previously been employed by NEMC, and maintained his office at NEMC while overseeing claims for all of the Lifespan affiliates.

As set forth in a Complaint recently filed in Massachusetts, NEMC alleges that Lifespan had substantial control and authority over the policies and operations of NEMC. Aff. Ex. A. Inherent in this contention is that NEMC gave such control to Lifespan, a Rhode Island corporation based in Providence, and that Lifespan exercised it during the affiliation.

Not only was there an intermingling of directors/trustees, but also there was substantial interaction among medical staff. For example, David Wazer, M.D., the Chief of Radiation Oncology at NEMC, was appointed Chief of Radiation Oncology at Rhode Island Hospital. He served in both capacities for several years; indeed, he continues at the present time to serve as Chief at both institutions. Dr. Wazer attended meetings in Rhode Island from time to time.

Upon affiliation, Lifespan provided substantial services to NEMC, including technical and financial services. During the period of affiliation, NEMC participated in purchasing contracts and availed itself of the volume purchasing arrangements together with the other Lifespan affiliates. The Accounts Payable function for NEMC was located in Rhode Island. NEMC employees authorized all payments, but Lifespan Corporation processed all payments. This was also true for NEMC's investment accounts. NEMC paid management fees to Lifespan that covered allocated costs of the Lifespan system for accounting, legal, information technology and other services. In addition, beginning in 2002, Lifespan incurred costs that NEMC paid directly to Lifespan.

Furthermore, even after disaffiliation, Lifespan provided substantial services to NEMC during the 2003 transition period.

# ARGUMENT

## I. Standard Applicable To A Motion To Dismiss For Lack of Personal Jurisdiction.

When deciding a motion to dismiss for lack of personal jurisdiction, the courts in the First Circuit use the *prima facie* standard to determine whether personal jurisdiction is appropriate. See Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997); Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 34 (D.R.I. 2003). Under the *prima facie* standard, a plaintiff must "make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). The plaintiff has the burden of proving that the court has personal jurisdiction over a given defendant. Brian Jackson & Co., 248 F. Supp. 2d at 34 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). To sustain this burden, plaintiff "must go beyond the pleadings and make affirmative proof." Boit, 967 F.2d at 675; Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (The plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts."); Chlebda v. H.E. Fortna & Bros., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979). That proof, however, must be construed "in [a] light most congenial to plaintiff's jurisdictional claims. Scarlatelli v. Swarovski N. Am. Ltd., No. Civ. A 06-84T, 2006 WL 2474862, at *2 (D.R.I. Aug. 25, 2006).

Lifespan has put forth substantial evidence that easily satisfies this standard. In particular, this motion should be summarily denied based on the facts that NEMC, through its representatives, came into Rhode Island through phone calls and meetings to negotiate the very contract, the Restructuring Agreement, which is the subject of the

Complaint. Dupont Tire Serv. Ctr., Inc. v. No. Stonington Auto-Truck Plz., 659 F. Supp 861, 864 (D.R.I. 1987) (single trip into Rhode Island relating to the contract in issue by an officer of an out-of-state corporation is sufficient to exercise jurisdiction over the out-of-state corporation); Rodriguez v. Dixie Southern Industrial, Inc., 113 F.Supp.2d 242, 251-2 (D.P.R. 2000) (defendant's mailing of documents and making phone calls into Puerto Rico relating to the contract in issue was sufficient to establish jurisdiction in Puerto Rico); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184 (1985) (mail and wire communications into the forum state, as opposed to physical presence, sufficient to establish purposeful availment for jurisdictional purposes); The Giving Back Fund, Inc. v. Steverson, 2002 WL 1586994, at *3 (D.Mass. 2002) (calls and visits to forum state that related to claims against the defendant satisfied jurisdictional requirements); Workgroup Tech. Corp. v. MGM Grand Hotel, LLC., 246 F.Supp.2d 102, 113 (D. Mass. 2003) (defendant's calls, emails and facsimiles to plaintiff in Massachusetts sufficient for court to find jurisdiction where contract claims arose out of these communications); Lucerne Farms v. Baling Technologies, Inc., 226 F. Supp. 2d 255, 259 (D. Me. 2002) (defendant's phone calls and facsimiles negotiating contract terms with plaintiff were sufficient for exercise of jurisdiction over out-of-state corporation in forum state where claim related to contract).

Beyond that, there are many additional reasons that this Court should exercise jurisdiction over NEMC as set forth herein.

## II. Lifespan Satisfies The Evidentiary Requirements of The Due Process Clause of the United States Constitution.

In order to establish personal jurisdiction, Lifespan must show that (1) the forum state has a long-arm statute that purports to grant jurisdiction over the defendant and (2)

exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. Due process requires that a defendant have sufficient contacts with the forum state so that an exercise of long arm jurisdiction will not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). This requires a showing that NEMC should reasonably anticipate being haled into court in Rhode Island. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see Euro-Pro Operating LLC v. Scutte, C.A. No. 05-11946-DPW, 2006 WL 239802, at *1 (D. Mass. Jan. 31, 2006).

Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, asserts jurisdiction to the maximum extent permitted by the Fourteenth Amendment, and the question is whether asserting jurisdiction over NEMC is consistent with the Due Process Clause. It is.

There are two different ways by which a court may acquire personal jurisdiction over a non-resident defendant. Where the defendant has had continuous and systematic contacts with the forum state, the court has general jurisdiction, and may hear causes of action unrelated to the forum. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 75 (D.R.I. 1995) ("The continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive.") If, however, the defendant's contacts with the forum are limited so that they are not sufficient to support the constitutional exercise of general jurisdiction, the court may still exercise specific jurisdiction over the defendant if the plaintiff's claims actually arose out of the defendant's contacts with the forum state. Id. at 74. Lifespan meets both tests.

**A. This Court Can Exercise Specific Personal Jurisdiction Over NEMC.**

This Court has specific personal jurisdiction over NEMC because the claims asserted arise out of a contract entered into by the parties that has a substantial connection to Rhode Island by reason of the parties' affiliation for approximately 5 years and because the representatives of NEMC came into Rhode Island by phone and in person to negotiate the Restructuring Agreement that is the subject of the Complaint.

The First Circuit has established a tripartite test for determining whether the exercise of specific personal jurisdiction comports with the constitutionally mandated minimum contacts requirements:

(1) The claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities;
(2) The defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the state's courts foreseeable; and
(3) The exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Brian Jackson & Co., 248 F. Supp. 2d at 35; Subsalve USA Corp. v. Watson Mfg., Inc., 392 F. Supp. 2d 221, 222 (D.R.I. 2005). In order for the Court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied. Scarlatelli, 2006 WL 2474862, at *3 (D.R.I. Aug. 25, 2006).

**1. Plaintiff Satisfies The Relatedness Requirement.**

"The [relatedness] requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Brian Jackson & Co., 248 F. Supp. 2d at 35. In order to meet the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec.



PRV_841008_1/DSHERMAN

Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992); Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 137 (1st Cir. 2006).

Here it is obvious that the claims asserted in the Complaint arise out of the unwinding of the affiliation between Lifespan and NEMC and, specifically, from the Restructuring Agreement between Lifespan and NEMC. NEMC was an affiliate – in essence a subsidiary – of a Rhode Island corporation that was routinely involved in the day-to-day affairs of NEMC.[3] For a period of 5 years the affairs of Lifespan and NEMC were intertwined at all levels, from the directors to the medical staff to the administrative staff, all of which had a significant nexus to Rhode Island.

**2. NEMC Purposefully Availed Itself Of The Privilege Of Conducting Activities In Rhode Island.**

"Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship . . . the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 292 (1st Cir. 1999) (emphasis in original). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." Scarlatelli, 2006 WL 2474862, at *6 (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

Here, NEMC came into Rhode Island and requested that Lifespan enter into an Affiliation Agreement with it to operate as a single healthcare system under Lifespan as part of an effort to build a healthcare delivery system in New England. NEMC affairs

[3] Lifespan of Massachusetts, Inc. was created by Lifespan to be the sole member of NEMC and while technically NEMC was a subsidiary of that entity, Lifespan at the time of the Affiliation Agreement operated as if it were a direct subsidiary.

became inextricably entwined with those of Lifespan; indeed, it availed itself of the administrative expertise brought by Lifespan to the affiliation. NEMC voluntarily chose to affiliate with a Rhode Island entity and thereby purposely availed itself of the privilege of doing business in Rhode Island. Furthermore, it negotiated with Lifespan personnel in Rhode Island to disaffiliate by virtue of entering the Restructuring Agreement.

### 3. The Gestalt Factors Call For The Exercise Of Personal Jurisdiction Over NEMC In This Case.

To determine the reasonableness of exercising personal jurisdiction over NEMC in this case, the Court also must consider the Gestalt factors. See, e.g., World-Wide Volkswagen Corp., 444 U.S. at 292; Microfibres, Inc. v. Squires Hightech Corp., CA 04-21-T, 2006 WL 305975, at *8 (D.T.I. Feb. 8, 2006). A brief review of these factors reveals that they call for the exercise of personal jurisdiction over NEMC.

#### a. NEMC's Burden of Defending in Rhode Island.

This case is a straightforward collection case. It poses no great burden on NEMC to defend - a mere 50 miles from Boston where NEMC is based.

#### b. Rhode Island's Interest In Adjudicating The Dispute.

Rhode Island has an interest in providing its citizens with a forum to litigate its disputes. The affiliation and the unwinding of same has a direct relationship to Lifespan, a Rhode Island corporation.

#### c. Plaintiff's Interest In Obtaining Convenient and Effective Relief.

Lifespan would be inconvenienced by litigating its causes of action outside of Rhode Island where there is a clear nexus.

**d. The Effective Administration Of Justice Will Be Served In This Case Regardless Of The Forum.**

The effective administration of justice with respect to this litigation will be best achieved if the claims are litigated in Rhode Island. This is a straightforward breach of contract case.

**e. The Judicial System's Interests And The States' Common Interests Requires The Exercise Of Personal Jurisdiction Over NEMC.**

The judicial system's and the states' interests in obtaining the most effective resolution of this litigation requires that this case be litigated in Rhode Island. It is a breach of contract action with a Rhode Island corporation that should be litigated in this forum.

**B. General Jurisdiction Exists Over NEMC.**

In considering minimum contacts for the purposes of analyzing a claim of general jurisdiction, "a court properly focuses on the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984); see Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). The general jurisdiction standard is "considerably more stringent than the standard for specific jurisdiction." Barry, 909 F. Supp. at 74.

The exercise of general jurisdiction over NEMC clearly would be correct in this case for the reason that during the period of affiliation, NEMC had continuous and systematic contacts with Rhode Island. As set forth above, the affairs of the two entities were inextricably intertwined. There were numerous meetings and calls into Rhode Island at all levels from Directors and CEOs to medical and administrative staff. By NEMC's own contention, Lifespan controlled its activities – from Rhode Island. NEMC

had substantial contacts with Rhode Island for a period of 5 years; that is sufficient to satisfy the general jurisdictional requirement.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss for lack of personal jurisdiction should be denied.

LIFESPAN CORPORATION

By its attorneys,

/s/ Deming E. Sherman

Deming E. Sherman (#1138)
Patricia A. S. Sullivan (#2120)
Jon M. Anderson (#3946)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

October 16, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of October, 2006, a copy of the within Memorandum of Law was sent by electronic means (ECF) to the following counsel of record:

David A. Wollin, Esq.
dwollin@apslaw.com

/s/ Deming E. Sherman