UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.<br><br>Defendants. | ) | C. A. No. 06-421T |

**AFFIDAVIT**

I, Kenneth E. Arnold, on oath depose and say as follows:

1. I am Senior Vice President, General Counsel and Secretary of Lifespan Corporation ("Lifespan") and have personal knowledge of the facts set forth herein.

2. I submit this Affidavit to supplement Lifespan's Complaint and demonstrate that the defendants are subject to the jurisdiction of this Court.

3. Lifespan is a Rhode Island corporation with its principal office located at 167 Point Street, Providence, Rhode Island. It is a holding company and supporting organization for several affiliated hospitals, including Rhode Island Hospital and Miriam Hospital in Providence, Rhode Island.

4. In October, 1977, Lifespan and New England Medical Center, Inc. ("NEMCI"), parent of New England Medical Center Hospitals, Inc. ("NEMCH"), (collectively "NEMC") entered into an Amended and Restated Master Affiliation Agreement ("Affiliation Agreement") pursuant to which Lifespan and NEMC and their respective affiliates agreed to operate as a single healthcare system under Lifespan as a

common parent. One of the stated purposes of the Affiliation Agreement was to "build together a healthcare delivery system to serve New England . . ."

5. The affiliation came about after NEMC contacted Lifespan at its offices in Providence, Rhode Island about a possible affiliation. NEMC had been negotiating with Columbia HCA about a possible affiliation and towards the end of that negotiation contacted Lifespan's counsel to determine whether Lifespan was interested. Lifespan indicated that it was interested, and thereafter negotiations ensued that resulted in the Affiliation Agreement.

6. The affiliation continued until September 30, 2002, at which time the parties entered into a Restructuring Agreement, and related agreements, pursuant to which NEMC disaffiliated from Lifespan. In the Restructuring Agreement, which came about because of "changing economic conditions, including changes in the managed care market in Massachusetts and Rhode Island" (p. 1), it is provided that "the parties desire to restructure the Affiliation and operate independently from one another" (p. 1). A copy of the Restructuring Agreement is attached to the Complaint as Exhibit A.

7. NEMC's breach of the Restructuring Agreement gives rise to this Complaint. NEMC has refused to make payments totaling $3.66 million that are or will become due Lifespan.

8. During the period of affiliation, the parties' operations were intertwined with and dependent upon one another. On a daily basis, there were numerous contacts between Lifespan personnel in Rhode Island and NEMC personnel in Boston by phone and in person.

9. Between 1997 and 2002, the affiliation period, Lifespan had a Board of Directors. The Board of Directors and its committees met regularly at Lifespan's facilities

in Rhode Island, including Rhode Island Hospital. Board of Director's meetings in Rhode Island were held approximately ten times per year.

10. George Vecchione, a Rhode Island resident, was CEO of Lifespan and between 1998 and 2002 was an *ex officio* member of the Lifespan Board of Directors. He continues to serve in these offices.

11. After the affiliation in 1997, Lifespan of Massachusetts, Inc., a subsidiary of Lifespan, served as the sole voting member of NEMCI and NEMCH, both Massachusetts corporations. As part of the affiliation, those persons serving from time to time as the members of Lifespan Corporation's Board of Directors also served as the Members of Lifespan of Massachusetts, Inc. NEMC also had a Board of Trustees whose members were elected by Lifespan of Massachusetts, Inc.

12. Throughout the affiliation period, the Chair of the Lifespan Board of Directors served as a trustee of NEMC, *ex officio*.

13. The Chairman of the NEMC Board at the time of the 1997 Affiliation Agreement, George Carmany, executed the Affiliation Agreement on behalf of NEMC and served as a vice-chairman of the Lifespan Board from 1998 to 2001. He attended Lifespan Board meetings in Rhode Island.

14. Throughout the period of the affiliation, and in accordance with the terms of the Affiliation Agreement, a number of other persons who were either Trustees of NEMC or who were physicians working at NEMC served from time to time on the Lifespan Board of Directors. These included: Walter M. Cabot, Sr.; Jill Ker Conway, Ph.D; H. Jay Sarles; Stanley Shapshay, M.D.; John F. Rockart, Ph.D.; Norman Stearns, M.D.; and N. A. Mark Estes, III, M.D. The 2002 Restructuring Agreement contained a provision that the NEMC trustees and physicians would resign as Lifespan Directors.

15. The Affiliation Agreement provided that every standing committee of the Lifespan Board of Directors would include in its membership at least one individual who had served on the NEMC Board of Trustees immediately prior to the affiliation.

16. During the period of affiliation, NEMC Trustees served on the Lifespan Board and on most of its Committees and regularly attended meetings in Rhode Island. By way of example, George Carmany, Chairman of the Board of Trustees of NEMC at the time the Affiliation Agreement was executed, served on the Lifespan Board and its Finance Committee from 1997 until 2002. Malcolm Sherman succeeded Mr. Carmany as Chairman of NEMC. Mr. Sherman served on the Lifespan Board of Directors from 2000 through the end of the affiliation period; he served on Lifespan's Finance Committee during that time; and he executed the 2002 Restructuring Agreement on behalf of NEMC while serving as a Director of Lifespan.

17. By the terms of the 1997 Affiliation Agreement, the President and CEO of NEMC, Thomas F. O'Donnell, Jr., M.D., was to remain in office; however, he reported to William Kreykes, who was President and CEO of Lifespan. He reported to the incumbent President and CEO of Lifespan throughout the affiliation period.

18. The terms of the Affiliation Agreement granted the President and CEO of Lifespan the authority to remove the President of NEMC.

19. The President of NEMC regularly attended management meetings and Board and Committee meetings in Rhode Island. The President of NEMC met regularly with the President and CEO of Lifespan, either in Rhode Island or by phone.

20. Following the 1997 Affiliation Agreement, NEMC merged its offshore captive insurance company operations into Lifespan Corporation's offshore captive insurance company. Throughout the period of affiliation, there was a single captive

insurance company serving all of the Lifespan affiliates both in Rhode Island and Massachusetts. On-shore servicing and claims management were provided by Lifespan Risk Services, Inc., a Rhode Island corporation. The claims manager for Lifespan Risk Services, Inc., had previously been employed by NEMC, and maintained his office at NEMC while overseeing claims for all of the Lifespan affiliates.

21. As set forth in a Complaint recently filed in the Suffolk County Superior Court in Massachusetts, NEMC alleges that Lifespan had substantial control and authority over the policies and operations of NEMC. Inherent in this contention is that NEMC gave such control to Lifespan, a Rhode Island corporation, and that Lifespan exercised it for the period of affiliation. Excerpts from the Complaint are attached as Exhibit A.

22. Not only was there an intermingling of directors/trustees, but also there was substantial interaction among medical staff. For example, David Wazer, M.D., the Chief of Radiation Oncology at NEMC, was appointed Chief of Radiation Oncology at Rhode Island Hospital. He served in both capacities for several years; indeed, he continues at the present time to serve as Chief at both institutions.

23. Upon affiliation, Lifespan provided substantial services to NEMC, including technical and financial services.

24. During the period of affiliation, NEMC participated in purchasing contracts and availed itself of the volume purchasing arrangements together with the other Lifespan affiliates. The Accounts Payable function for NEMC was located in Rhode Island. NEMC employees authorized all payments, but Lifespan Corporation processed all payments. This was also true for NEMC's investment accounts. NEMC paid management fees to Lifespan that exceeded several million dollars annually. These

fees were paid on an allocated cost basis to all members of the Lifespan system for accounting, legal, information technology and other services. In addition, beginning in 2002 Lifespan incurred costs that NEMC paid directly to Lifespan. Even after NEMC separated from Lifespan in 2002, Lifespan provided services to NEMC pursuant to the Restructuring Agreement and related agreements for which NEMC was billed in excess of $10 million during the transition in 2003.

25. George Vecchione and I principally negotiated the Restructuring Agreement that is the subject of this litigation. We negotiated the Agreement with Malcolm Sherman on behalf of NEMC while he continued to serve as a director of Lifespan, and with Thomas F. O'Donnell, Jr., President of NEMC. During the course of this negotiation, there were a number of telephone calls to George Vecchione and to me in Providence regarding the Agreement. There were also several meetings in Providence and Pawtucket, Rhode Island, concerning the Agreement.

26. The Restructuring Agreement contemplated the negotiation of one or more service agreements between the parties related to the disaffiliation. These service agreements were negotiated and resulted in the provision of services to NEMC by Lifespan. Negotiation of these service agreements also involved telephone calls to Lifespan personnel in Rhode Island and meetings in Rhode Island as well.

Kenneth E. Arnold

STATE OF RHODE ISLAND
PROVIDENCE, Sc.

Subscribed and sworn to before me by Kenneth E. Arnold, Senior Vice President, General Counsel, and Secretary of Lifespan Corporation, this 16th day of October, 2006.

Notary Public

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of October, 2006, a copy of the within Affidavit was sent by electronic means (ECF) to the following counsel of record:

David A. Wollin, Esq.
dwollin@apslaw.com

/s/ Deming E. Sherman

# EXHIBIT A

COPY

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.,

Plaintiffs,

v.

LIFESPAN CORPORATION and LIFESPAN CORPORATION OF MASSACHUSETTS, INC.

Defendants.

SUFFOLK SUPERIOR COURT
C.A. NO. 06-4089 -C

**COMPLAINT**

SUMMARY OF THE ACTION

1. This is an action by New England Medical Center, Inc. ("NEMCI") and New England Medical Center Hospitals, Inc. ("NEMCH") (collectively "NEMC") against Lifespan Corporation ("Lifespan") and Lifespan of Massachusetts, Inc. ("LOM") to enforce a contractual indemnification provision, as well as for breach of fiduciary duty, unjust enrichment and violation of G.L. c. 93A.

2. During the course of dealings between the parties, Lifespan and LOM engaged in willful misconduct and/or gross negligence that caused NEMC substantial losses and involved the waste and misappropriation of NEMC's assets by Lifespan. Section 7.2 of the Restructuring Agreement between NEMC and Lifespan obligates Lifespan to indemnify NEMC for these losses, which substantially exceed the remaining $3.66 million in payments that would otherwise be due from NEMCI, now and in the future, under Section 2.2.3 of the Restructuring Agreement.



RECEIVED
SEP 29 2006
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN

3. Lifespan's conduct also breached the fiduciary duties that it owed to NEMC and resulted in Lifespan being unjustly enriched at the expense of NEMC. Accordingly, NEMC seeks compensatory damages and disgorgement of the profits Lifespan earned from its wrongful conduct toward Lifespan. Because Lifespan's conduct also amounted to willful and knowing violations of G.L. c. 93A, NEMC further seeks recovery of double or treble damages and its attorneys' fees and costs.

PARTIES

4. Plaintiff New England Medical Center, Inc. ("NEMCI") is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts.

5. Plaintiff New England Medical Center Hospitals, Inc. ("NEMCH") is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts.

6. Defendant Lifespan Corporation ("Lifespan") is a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

7. Defendant Lifespan of Massachusetts ("LOM") is a Massachusetts corporation.

JURISDICTION AND VENUE

8. This court has personal jurisdiction over Lifespan pursuant to G.L. c. 223A, § 3 (a), (b), (c) and/or (d), because Lifespan transacted business, contracted to supply services, and caused injury in this Commonwealth through its conduct during the period of its affiliation with NEMC. This Court has personal jurisdiction over LOM because LOM is a Massachusetts corporation.

9. This Court has subject matter jurisdiction over this matter pursuant to G.L. c. 212, §3 because it seeks money damages in excess of $25,000.

10. Venue in this Court is proper pursuant to G.L c. 223, §1, because NEMC operates businesses in Suffolk County and defendants Lifespan and LOM managed NEMC's businesses in Suffolk County during the period of the parties' affiliation.

FACTS

11. As of September 30, 2002, NEMC and Lifespan entered into a Restructuring Agreement terminating the affiliation between the parties. A copy of that agreement is attached hereto as Exhibit A.

12. In that Restructuring Agreement, the parties agreed, among other things, that "Lifespan will indemnify NEMC for any losses it incurs that result directly and solely

> (x) from Lifespan's willful misconduct or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the Affiliation Period [October 31, 1997 through October 31, 2002] **or**
>
> (y) from a material obligation that was approved by the Board of Directors of LOM, acting as sole member of NEMCI or NEMCH, as the case may be, but not otherwise, where such action was taken without the knowledge, consent, ratification or approval of the chief executive officer, chief financial officer or any trustee of NEMCI or NEMCH or any of the NEMC Affiliates."

Restructuring Agreement ¶ 7.2 (emphasis added).

13. NEMC has incurred substantial losses resulting directly and solely from Lifespan's willful misconduct and/or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the Affiliation Period, including but not limited to the conduct described below. Such conduct also breached the fiduciary duties that Lifespan owed to NEMC and constituted willful and knowing violations of G.L. c. 93A. This conduct includes, but is not limited to, the following: