UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-421T |
| | ) | |
| NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT**

I, Kenneth E. Arnold, on oath depose and say as follows:

1. I am Senior Vice President, General Counsel and Secretary of Lifespan Corporation ("Lifespan") and have personal knowledge of the facts set forth herein.

2. I submit this Affidavit to respond to the Reply Memorandum of New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. ("NEMC").

3. In 2002 and 2003, after Lifespan and NEMC ceased their affiliation as of September 30, 2002, Lifespan provided services to NEMC pursuant to a contract. NEMC did not make certain payments and disputed a portion of Lifespan's invoice. Beginning in 2004, I had a number of conversations and written communications by e-mail with Mr. Weinstein to attempt to resolve this controversy, which is unrelated to the present litigation. When NEMC refused to pay the $1.83 million due under the Restructuring Agreement on January 2, 2006 and stated that it would also not make the payment due

January 2, 2007, my discussions with Mr. Weinstein began to include payment of this contractual obligation.

4. In March and April 2006, I corresponded with Mr. Weinstein about the $3.66 million owed to Lifespan under the Restructuring Agreement and NEMC's potential claims against Lifespan relating to the period of affiliation. There was a substantial difference in the respective positions of NEMC and Lifespan, and NEMC blamed Lifespan for losses incurred during the affiliation period. Mr. Weinstein advised me of the possibility of litigation.

5. On July 13, 2006, Mr. Weinstein told me that NEMC had been aware for three weeks that Lifespan had consulted litigation counsel and other professional advisors with the intent of filing suit against NEMC. In another conversation, Mr. Weinstein told me that he had prepared a lawsuit against Lifespan. I stated to him that we saw no basis for discounting the $3.66 million due under the Restructuring Agreement.

6. Prior to commencement of this lawsuit, George Vecchione, CEO of Lifespan, wrote a letter to his counterpart, Ellen Zane, CEO of NEMC, about this dispute, and never received a reply. There were several additional discussions between Mr. Weinstein and me about possible settlement.

7. Mr. Weinstein called me on July 28, 2006 and wanted to know if Lifespan was going to propose a counteroffer to NEMC's latest offer, or if Lifespan was simply rejecting NEMC's latest offer and would now cease discussions. I responded that Mr. Vecchione was still waiting for a response to the basic question he asked Ms. Zane in his June 28, 2006 letter, which was whether there was anything that was not known to the NEMC Board chair and the NEMC President, who entered into the Restructuring Agreement on behalf of NEMC, that might form a basis for renegotiating the Agreement.

I said if there is something material that was unknown to the institution, Mr. Vecchione wanted to know that and what that information might be. If there was nothing, he at least wanted to know that. I reiterated that Mr. Vecchione's letter to CEO Zane asked the question, and that Lifespan did not believe that there was any basis for renegotiating the Agreement. I did not say, or imply, that we would not renegotiate under any circumstances, but I did say that we needed an answer. He said he would put something a little more formal together the following week and get it to me. He subsequently telephoned me to let me know that other pressing matters caused a delay in his response.

8. On August 22, 2006, Mr. Weinstein sent a demand letter asserting substantial damage claims.

9. Upon receipt of that letter, I had further conversations with Mr. Weinstein. Mr. Weinstein's last proposal included a payment by NEMC in complete satisfaction of the $3.66 million due under the Restructuring Agreement that was less than 20 percent of the previous offer, made in April 2006. In all of the discussions and written correspondence between Lifespan and NEMC, Lifespan never indicated any willingness to renegotiate the $3.66 million in payments due under the Restructuring Agreement. It was clear to me that NEMC and Lifespan were far apart, and while there were some further discussions about resolution, it was also clear to me that NEMC did not intend to settle this matter on terms that would be acceptable to Lifespan.

10. I did not mislead Mr. Weinstein to believe that Lifespan would be responding to an outstanding settlement proposal so that he would refrain from filing a lawsuit in Massachusetts.

11. Lifespan decided to commence suit on September 20, 2006.

12. I spoke with Mr. Weinstein upon commencement of the lawsuit before the Complaint was served. I made a subsequent proposal, to which NEMC has not responded. I did not state that Mr. Vecchione or anyone else directed me not to call Mr. Weinstein to advise him of Lifespan's intentions.

Kenneth E. Arnold

STATE OF RHODE ISLAND
PROVIDENCE, Sc.

Subscribed and sworn to before me by Kenneth E. Arnold, Senior Vice President, General Counsel, and Secretary of Lifespan Corporation, this 18th day of December, 2006.

Notary Public
my Commission expires: 9/3/08

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of December, 2006, a copy of the within Affidavit was sent by electronic means (ECF) to the following counsel of record:

David A. Wollin, Esq.
dwollin@apslaw.com

/s/ Deming E. Sherman