UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>VS.<br><br>NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.<br><br>Defendants. | ) | C. A. No. 06-421T |

**DEFENDANTS' MOTION TO AMEND COUNTERCLAIM**

Defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. respectfully move, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to amend their counterclaim to expand the contractual indemnification claim set forth in count I of the counterclaim. The grounds for this motion are set forth in the accompanying memorandum of law, together with the proposed Amended Counterclaim attached thereto as Exhibit 1. The new allegations are set forth in paragraphs 2, 15-17 and 24-25 of the Amended Counterclaim.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and
NEW ENGLAND MEDICAL CENTER
HOSPITALS, INC.,

By their attorney,

*<u>/s/ David A. Wollin</u>*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

E-Mail: dwollin@apslaw.com
Phone: 401.274.7200
Fax: 401.351.4607
Dated: July 2, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2007, I did send a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

/s/ David A. Wollin

*421339_1.doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>VS.<br><br>NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.<br><br>Defendants. | ) | C. A. No. 06-421T |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO AMEND THE COUNTERCLAIM**

Defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively "NEMC") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to amend their counterclaim to expand the contractual indemnification claim set forth in count I of the counterclaim. For the reasons discussed below, leave to amend should be granted because the discovery has only proceeded for four months, the deadline for closure of discovery does not occur for another eight months, no depositions have occurred, no dispositive motions have been filed, Lifespan will suffer no prejudice as a result and this amendment is based, in part, on recently-obtained documents authored by Plaintiff Lifespan Corporation ("Lifespan") and interrogatory answers by Lifespan.

**BACKGROUND**

On September 20, 2006, Lifespan filed this action alleging that NEMC breached a Restructuring Agreement which terminated their affiliation and changed their corporate relationship. Specifically, Lifespan alleges that NEMC failed to make two payments due under the Restructuring Agreement in the amount of $3.66 million. A copy of the Restructuring Agreement is attached to Lifespan's complaint in this action.

After initially moving to dismiss for lack of personal jurisdiction, NEMC withdrew that motion and instead moved to stay this lawsuit pending the outcome of a parallel action pending in Massachusetts State Court. On January 10, 2007, this Court denied the motion to stay.

On January 22, 2007, NEMC filed its answer and counterclaim against Lifespan. NEMC's counterclaim alleged that, during the course of the parties' dealings during the time of their affiliation, Lifespan and its affiliate, Lifespan Corporation of Massachusetts, Inc. ("LOM"), engaged in willful misconduct and/or gross negligence that caused NEMC substantial losses and involved the waste and misappropriation of NEMC's assets by Lifespan. NEMC asserted that Section 7.2 of the Restructuring Agreement obligated Lifespan to indemnify NEMC for these losses, which substantially exceeded the remaining $3.66 million in payments that would otherwise have been due from NEMC under the Restructuring Agreement. NEMC also alleged that Lifespan's conduct breached the fiduciary duties that it owed to NEMC and resulted in Lifespan being unjustly enriched at the expense of NEMC. Accordingly, NEMC has sought compensatory damages and disgorgement of the profits Lifespan had earned from its wrongful conduct toward Lifespan. NEMC's counterclaim contains four counts directed against Lifespan. Count I asserts a contractual indemnification claim based on the last paragraph of Section 7.2 of the Restructuring Agreement. Counts II, III and IV assert claims for breach of fiduciary duty,

unjust enrichment and violation of Massachusetts General Laws, Chapter 93A, respectively. Because Lifespan's conduct has amounted to willful and knowing violations of Massachusetts General Laws, c.93A, NEMC has further sought recovery of double or triple damages and its attorneys' fees and costs.

Of particular relevance to the instant motion is Count I of NEMC's original counterclaim. In that count, NEMC has asserted a contractual indemnification claim based upon Section 7.2 of the Restructuring Agreement, which provides in the last paragraph that Lifespan is liable to NEMC for 1) willful misconduct or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the affiliation period, and 2) a material obligation that was approved by LOM's Board of Directors and where such action was taken without the knowledge, consent, ratification or approval of the Chief Executive Officer, Chief Financial Officer, or any trustee of NEMC or its affiliates. In Count I, NEMC has asserted that Lifespan is liable under these standards because it failed to manage NEMC's commercial payor contracts, deliberately charged excessive corporate management fees and capital charges, wasted NEMC's assets, depleted NEMC's reserves and compelled NEMC to enter into an interest rate swap transaction with Morgan Stanley, despite opposition from NEMC.

On February 26, 2007, the Court held a Rule 16 conference and entered a scheduling order. The scheduling order sets the closure of discovery as March 1, 2008, with interim dates for the parties to provide expert disclosures. Since that time, the parties have exchanged initial disclosures under Rule 26 and have propounded and responded to a first set of interrogatories and document requests. Lifespan produced documents to NEMC for the first time on May 18, 2007. However, no depositions have been scheduled and no dispositive motions have been filed

by the parties. Nor have any discovery motions be filed. A protective order governing the disclosure of confidential or "attorneys' eyes only" information was entered by the Court as recently as June 12, 2007.

**PROPOSED AMENDMENT TO COUNTERCLAIM**

NEMC's proposed amendment, attached hereto as Exhibit 1,[1] seeks to amend the counterclaim by expanding the contractual indemnification claim set forth in count I. Specifically, the amendment (reflected in additional language in paragraph 2 and new paragraphs now numbered 15-17 and 24-25) alleges that Lifespan is liable under paragraph 7.2(a) of the Restructuring Agreement which requires Lifespan to indemnify NEMC for any losses it incurred or suffered as a result of, arising out of, or directly or indirectly relating to any misrepresentations by Lifespan. Amended Counterclaim at ¶¶ 15, 24. In the new allegations, NEMC alleges that it incurred substantial losses as a result of, arising out of or directly or indirectly relating to intentional and/or negligent misrepresentations (affirmatively or by concealment) by Lifespan concerning the provision of services to NEMC. *Id*. at ¶¶ 16, 25. Such intentional and/or negligent misrepresentations were false when made and Lifespan knew or should have known through reasonable care or competence of such falsity. *Id*. The misrepresentations include, but are not limited to, the following:

> 1. At the outset of and throughout most of the affiliation, Lifespan misrepresented that, during the Affiliation Period, Lifespan would have full control of negotiating and maintaining NEMC's commercial payor contracts and that they had the experience and ability to competently negotiate and manage such contracts. During this same period, Lifespan failed to disclose they did not have the ability to competently negotiate and manage NEMC's contracts. In fact, Lifespan grossly mismanaged, and in many cases willfully ignored altogether, this contract management function as outlined

[1] The proposed amendment is attached hereto, as required by LR Cv 15(a). In accordance with Appendix A (Page Limits) of the Scheduling Order in this case, the remaining exhibits do not exceed 10 pages.

above. As examples of such gross mismanagement, Lifespan failed to renegotiate contracts for years following their effective termination dates or renegotiated payor contracts at rates well below market levels, and uniformly failed to negotiate payor contracts on behalf of the physicians who made up the staff at New England Medical Center to the substantial detriment of NEMC. As a result of Lifespan's intentional and/or negligent misrepresentations, NEMC suffered millions of dollars in losses in the form of years of substandard reimbursement from its commercial payors. *Id*. at ¶ 16(a).

2. At the outset of and during the affiliation, Lifespan misrepresented that NEMC's affiliation with Lifespan would result in costs savings to NEMC and programmatic initiatives in NEMC's favor. Upon information and belief, at the time these misrepresentations were made, there was no intention on the part of Lifespan to effect these cost savings or programmatic initiatives, such as making NEMC the regional cancer center for the Lifespan system. As a result of these misrepresentations, NEMC paid excessive corporate management fees and capital charges and saw its cash and investment assets depleted by more than $90 million. *Id*. at ¶ 16(b).

3. Prior to NEMC entering into the Interest Rate Swap Transaction, Lifespan misrepresented, by failing to disclose, that the senior Lifespan executive promoting the Interest Rate Swap Transaction to NEMC had an impermissible and unethical conflict of interest with the principal proponent of the Transaction at Morgan Stanley that disqualified the executive from being involved in promoting the Transaction. Moreover, prior to NEMC entering into the Interest Rate Swap Transaction, Lifespan failed to disclose to NEMC that Lifespan had determined that the very same transaction was regarded as too risky for Lifespan to engage in itself. Had such unethical conflict or Lifespan's rejection of the transaction been disclosed, NEMC would not have entered into the Interest Rate Swap Transaction. Rather, Lifespan compelled NEMC to enter into an Interest Rate Swap Transaction with Morgan Stanley that resulted in losses of millions of dollars to NEMC. *Id*. at ¶ 16(c).

NEMC further alleges that it reasonably and justifiably relied upon the foregoing misrepresentations to its detriment and such reliance caused NEMC substantial damages. *Id*. at ¶¶ 17, 25.

**ARGUMENT**

Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave to amend shall be freely given when justice so requires." Fed. R. Civ. P.15(a); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962). While the ruling on a motion to amend is within the discretion of the trial court, amendments under the rule are liberally granted, and an adequate reason for the denial of leave to amend must be given. *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996); *Desrosiers v. The Hartford Life & Accident Ins. Co*., 354 F. Supp.2d 119, 129 (D.R.I. 2005). As this Court has noted, a motion to amend should be granted unless it is apparent that it would reward undue delay, bad faith or dilatory motive or leave to amend would be futile. *Ferreira v. City of Pawtucket*, 365 F. Supp.2d 215, 216 (D.R.I. 2004).

Consistent with the foregoing authorities, leave to amend the counterclaim should be granted in this matter. Clearly, there has been no undue delay in seeking the amendment, and Lifespan will suffer no prejudice as a result. As noted above, discovery did not begin until four months ago when the Court entered a scheduling order in this case. The discovery to date has been limited to exchanging of documents in response to initial disclosures and recent responses to a first set of requests for production of documents and a set of interrogatories. More importantly, there is some eight months left before discovery closes, and no depositions or dispositive motions have been scheduled or filed, respectively. Indeed, no discovery motions have even been filed. This is not a case where discovery is substantially completed or closed or the case is on the eve of trial which would necessitate a change in trial strategy or require postponement of a scheduled trial. Indeed, the proposed amendment would not even require changing any of the deadlines in the scheduling order.

Moreover, the expansion of the contractual indemnification claim is not interposed in bad faith or based on a dilatory motive. Rather, the claim is solidly grounded in the explicit language of Section 7.2(a) of the Restructuring Agreement, which requires Lifespan to indemnify NEMC for any losses it incurred or suffered as a result of, arising out of or directly or indirectly relating to any misrepresentation of Lifespan.[2] Indeed, the expansion of the contract claim is based, in part, on newly-received documents authored by Lifespan, including one summarizing an internal Lifespan investigation of the impermissible and unethical conflict of interest between a senior Lifespan executive and the principal proponent at Morgan Stanley of the interest rate swap transaction, a copy of which is attached hereto as Exhibit 2. Likewise, it is based on Lifespan's recent interrogatory answers such as those pertaining to Lifespan's role in payor contracting (describing Lifespan's role in payor contracting contrary to the representations made to NEMC) and the Interest Rate Swap Transaction (describing the internal investigation contrary to the report itself). Exhibit 3.

In short, there is no compelling reason for disallowing the amendment. *Nasco, Inc. v. Public Storage, Inc.*, 29 F.3d 28, 25 (1st Cir. 1994). To the contrary, this is a case where the amendment should be liberally granted.

[2] The amendment to the contract claim, based as it is on Lifespan's "misrepresentations," properly sets forth the essential elements for misrepresentation. *See McEneaney v. Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573, 575, 650 N.E.2d 93, 96 (Mass App. 1982) (elements for fraud); *Maffei v. Roman Catholic Archbishop of Boston*, 449 Mass. 235, 255, 867 N.E.2d 300, 318 (Mass. App. 2007) (elements for negligent misrepresentation).

## CONCLUSION

For the foregoing reasons, NEMC respectfully requests that the Court grant its motion for leave to file the amended counterclaim as attached hereto.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and
NEW ENGLAND MEDICAL CENTER
HOSPITALS, INC.,

By their attorney,

*/s/ David A. Wollin*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
E-Mail: dwollin@apslaw.com
Phone: 401.274.7200
Fax: 401.351.4607
Dated: July 2, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2d day of July, 2007, I did send a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

*/s/David A. Wollin*

421339_1.doc