# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION, Plaintiff, | ) | C. A. No. 06-421T |
| VS. | ) | |
| NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC. Defendants. | ) | |

**DEFENDANTS' ANSWER AND AMENDED COUNTERCLAIM**

Defendants New England Medical Center, Inc. ("NEMCI") and New England Medical Center Hospitals, Inc. ("NEMCH") (collectively "NEMC") hereby answer the Complaint of Lifespan Corporation ("Lifespan") as follows:

**Parties**

1. Admitted.

2. Admitted.

3. Admitted.

**Jurisdiction and Venue**

4. The Jurisdiction and Venue allegations contained in the unnumbered Paragraph of the Complaint and in Paragraph 4 of the Complaint state conclusions of law; therefore no response is required. Further answering, NEMC admits that NEMC and Lifespan are citizens of different states and that the amounts claimed in this lawsuit exceed $75,000.

## Facts

5. NEMC admits that as of September 30, 2002, Lifespan, NEMCI, NEMC and Lifespan Corporation of Massachusetts, Inc. ("LOM") entered into a Restructuring Agreement, a copy of which is attached to the Complaint as Exhibit A. The Restructuring Agreement is a document that speaks for itself.

6. NEMC denies that Paragraph 6 provides an accurate and complete summary of the relevant terms of the Restructuring Agreement. The Restructuring Agreement is a document that speaks for itself.

7. NEMC denies that Paragraph 7 provides an accurate and complete summary of the relevant terms of the Restructuring Agreement. The Restructuring Agreement is a document that speaks for itself.

8. Denied. Further answering, NEMC states that because the losses for which Lifespan is contractually required to indemnify NEMC substantially exceed $3.66 million, NEMCI does not owe Lifespan any further monies under the Restructuring Agreement.

9. Denied. Further answering, NEMC states that because the losses for which Lifespan is contractually required to indemnify NEMC substantially exceed $3.66 million, NEMCI does not owe Lifespan any further monies under the Restructuring Agreement.

10. Denied. Further answering, NEMC states that because the losses for which Lifespan is contractually required to indemnify NEMC substantially exceed $3.66 million, NEMCI does not owe Lifespan any further monies under the Restructuring Agreement.

## Count I

11. Defendants incorporate their responses to Paragraphs 1 through 10.

12. Denied.

13. Denied.

**Count II**

14. Defendants incorporate their responses to Paragraphs 1 through 13.

15. Denied.

16. Denied.

**AFFIRMATIVE DEFENSES**

Without removing or altering the applicable burdens of proof, NEMC asserts the following affirmative defenses and reserves its rights to assert in the future such other and further defenses as may become available or apparent during pretrial proceedings.

FIRST AFFIRMATIVE DEFENSE

Lifespan's claims are barred, in whole or in part, by Lifespan's failure to honor its obligations to NEMC under the indemnification provisions of the Restructuring Agreement.

SECOND AFFIRMATIVE DEFENSE

Lifespan's claims are barred, in whole or in part, as a result of the breaches of fiduciary duty committed by Lifespan and LOM in its dealings with NEMC.

THIRD AFFIRMATIVE DEFENSE

Lifespan's claims are barred, in whole or in part, by estoppel and/or Lifespan's own unclean hands.

FOURTH AFFIRMATIVE DEFENSE

Lifespan's claims are barred, in whole or in part, as a result of its failure to join LOM under Fed. R. Civ. P. 19.

## AMENDED COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13(a), plaintiffs-in-counterclaim New England Medical Center, Inc. ("NEMCI") and New England Medical Center Hospitals, Inc. ("NEMCH") (collectively "NEMC") hereby assert the counterclaims below against defendant-in-counterclaim Lifespan Corporation ("Lifespan").

### INTRODUCTION

1. NEMC asserts these counterclaims against Lifespan to enforce a contractual indemnification provision, as well as for breach of fiduciary duty, unjust enrichment and violation of Massachusetts General Laws, chapter 93A.

2. During the course of dealings between the parties, Lifespan and its agent and affiliate, Lifespan Corporation of Massachusetts, Inc. ("LOM") made intentional and/or negligent misrepresentations and engaged in willful misconduct and/or gross negligence that caused NEMC substantial losses and involved the waste and misappropriation of NEMC's assets by Lifespan. Section 7.2 of the Restructuring Agreement between NEMC and Lifespan obligates Lifespan to indemnify NEMC for these losses, which substantially exceed the remaining $3.66 million in payments that would otherwise have been due from NEMCI under Section 2.2.3 of the Restructuring Agreement.

3. Lifespan's conduct also breached the fiduciary duties that it owed to NEMC and resulted in Lifespan being unjustly enriched at the expense of NEMC. Accordingly, NEMC seeks compensatory damages and disgorgement of the profits Lifespan earned from its wrongful conduct toward Lifespan. Because Lifespan's conduct also amounted to willful and knowing violations of Massachusetts General Laws, c. 93A, NEMC further seeks recovery of double or treble damages and its attorneys' fees and costs.

PARTIES

4. Plaintiff New England Medical Center, Inc. ("NEMCI") is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts.

5. Plaintiff New England Medical Center Hospitals, Inc. ("NEMCH") is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts.

6. Defendant Lifespan Corporation ("Lifespan") is a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Lifespan because it is a Rhode Island corporation. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and venue is proper pursuant to 28 U.S.C. § 1391.

FACTS

8. As of September 30, 2002, NEMC and Lifespan entered into a Restructuring Agreement terminating the affiliation between the parties. A copy of that agreement is attached to Lifespan's Complaint as Exhibit A.

9. In that Restructuring Agreement, the parties agreed, among other things, that "Lifespan will indemnify NEMC for any losses it incurs that result directly and solely

> (x) from Lifespan's willful misconduct or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the Affiliation Period [October 31, 1997 through October 31, 2002] **or**
>
> (y) from a material obligation that was approved by the Board of Directors of LOM, acting as sole member of NEMCI or NEMCH, as the case may be, but not otherwise, where such action was taken without the knowledge, consent, ratification or approval of the chief executive officer, chief financial officer or any trustee of NEMCI or NEMCH or any of the NEMC Affiliates."

Restructuring Agreement ¶ 7.2 (emphasis added).

10. NEMC has incurred substantial losses resulting directly and solely from Lifespan's willful misconduct and/or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the Affiliation Period, including but not limited to the conduct described below. Such conduct also breached the fiduciary duties that Lifespan owed to NEMC and constituted willful and knowing violations of G.L. c. 93A. This conduct includes, but is not limited to, the following:

a. Failure to Manage Commercial Contracts: During the Affiliation Period, Lifespan had sole responsibility for negotiating and maintaining NEMC's commercial payor contracts, and charged NEMC substantial fees for its performance of this function. In fact, Lifespan grossly mismanaged, and in many cases willfully ignored altogether, this contract management function. For example, NEMC discovered numerous instances where Lifespan had failed to renegotiate contracts for years following their effective termination dates. There were also numerous instances where Lifespan renegotiated payor contracts at rates well below market levels, to the substantial detriment of NEMC. As a result of Lifespan's conduct, NEMC suffered millions of dollars in losses in the form of years of substandard reimbursement from its commercial payors.

b. Failure to Manage Accounts Receivable: During the Affiliation Period, Lifespan grossly mismanaged and/or ignored entirely its responsibilities to oversee the pursuit of the collection of NEMC's accounts receivable. As a result of Lifespan's conduct, NEMC incurred bad debt expenses on these accounts receivable substantially in excess (by millions of dollars) of what it otherwise would have.

c. Deliberately Excessive Corporate Management Fees and Capital Charges: During the Affiliation, Lifespan charged, and NEMC paid, $166 million in corporate

management fees, amounts that Lifespan knew were grossly disproportionate to the services Lifespan was actually performing. Similarly, Lifespan charged, and NEMC paid, more than $15.8 million in Capital Charges, when Lifespan knew that these capital charges it was assessing bore no relation to the actual capital employed at, or for the benefit of, NEMC. NEMC did not discover these discrepancies until after the Affiliation Period ended.

d. Waste of NEMC's Assets: During the Affiliation Period, Lifespan systematically misappropriated NEMC assets for its own benefit, as manifested by the more than $90 million decrease in NEMC's cash and investment assets that occurred during that period.

e. Depletion of NEMC Reserves: During the Affiliation Period, Lifespan deliberately employed accounting practices to improperly bolster its own balance sheet while depleting NEMC's reserves, thereby leaving NEMC substantially under-reserved to its detriment.

f. Failure to Disclose Material Information to NEMC: In connection with the Interest Rate Swap Transaction described in Paragraph 12 below, Lifespan deliberately withheld material information about the transaction from NEMC, in violation of the fiduciary duties that Lifespan owed to NEMC.

11. NEMC has also incurred substantial losses resulting directly and solely from material obligations that it incurred as a result of actions that were approved by the Board of Directors of LOM, acting as sole member of NEMCI or NEMCH, and that were taken without the knowledge, consent, ratification or approval of the chief executive officer, chief financial officer or any trustee of NEMCI or NEMCH or any of the NEMC Affiliates. This conduct by

Lifespan and LOM also violated their fiduciary duties to NEMC and constituted willful and knowing violations of chapter 93A.

12. For example, Lifespan, through LOM, compelled NEMC to enter into an Interest Rate Swap Transaction with Morgan Stanley that resulted in substantial losses, of millions of dollars, to NEMC. Far from knowingly approving or consenting to this transaction, NEMC vigorously opposed it and requested that Lifespan obtain an independent expert opinion concerning the reasonableness and risk of the swap before proceeding. Lifespan rejected this request, and through LOM, compelled NEMC to proceed with the transaction notwithstanding its objections.

13. In addition to the losses incurred by NEMC as a result of the obligations imposed on it in the Interest Swap Transaction, the transaction placed NEMC in violation of its bond indenture covenants, forcing NEMC to incur substantial time and expense renegotiating those debt covenants, and compelling NEMC to agree to more restrictive covenants, to its detriment.

14. Prior to the closing of the Interest Rate Swap Transaction, Lifespan purposefully hid from NEMC the fact of its deep involvement in the place of the derivative, thereby depriving NEMC and its officers from the knowledge of this conflict of interest. Moreover, Lifespan purposefully failed to disclose to NEMC that Lifespan had determined that the very same transaction was regarded as too risky for Lifespan to engage in itself.

15. In addition, in the Restructuring Agreement, the parties agreed, among other things, that Lifespan shall indemnify NEMC for any losses it incurred or suffered as a result of, arising out of or directly or indirectly relating to any misrepresentation by Lifespan. Restructuring Agreement ¶ 7.2(a).

16. NEMC has incurred substantial losses as a result of, arising out of or directly or indirectly relating to intentional and/or negligent misrepresentations (affirmatively or by concealment) by Lifespan concerning the provision of services to NEMC. Such intentional and/or negligent misrepresentations were false when made and Lifespan knew or should have known through reasonable care or competence of such falsity. The misrepresentations include, but are not limited to, the following:

a. At the outset of and throughout most of the affiliation, Lifespan misrepresented that, during the Affiliation Period, Lifespan would have full control of negotiating and maintaining NEMC's commercial payor contracts and that they had the experience and ability to competently negotiate and manage such contracts. During this same period, Lifespan failed to disclose they did not have the ability to competently negotiate and manage NEMC's contracts. In fact, Lifespan grossly mismanaged, and in many cases willfully ignored altogether, this contract management function as outlined above. As examples of such gross mismanagement, Lifespan failed to renegotiate contracts for years following their effective termination dates or renegotiated payor contracts at rates well below market levels, and uniformly failed to negotiate payor contracts on behalf of the physicians who made up the staff at New England Medical Center to the substantial detriment of NEMC. As a result of Lifespan's intentional and/or negligent misrepresentations, NEMC suffered millions of dollars in losses in the form of years of substandard reimbursement from its commercial payors.

b. At the outset of and during the affiliation, Lifespan misrepresented that NEMC's affiliation with Lifespan would result in costs savings to NEMC and programmatic initiatives in NEMC's favor. Upon information and belief, at the time

these misrepresentations were made, there was no intention on the part of Lifespan to effect these cost savings or programmatic initiatives, such as making NEMC the regional cancer center for the Lifespan system. As a result of these misrepresentations, NEMC paid excessive corporate management fees and capital charges and saw its cash and investment assets depleted by more than $90 million.

c. Prior to NEMC entering into the Interest Rate Swap Transaction, Lifespan misrepresented, by failing to disclose, that the senior Lifespan executive promoting the Interest Rate Swap Transaction to NEMC had an impermissible and unethical conflict of interest with the principal proponent of the Transaction at Morgan Stanley that disqualified the executive from being involved in promoting the Transaction. Moreover, prior to NEMC entering into the Interest Rate Swap Transaction, Lifespan failed to disclose to NEMC that Lifespan had determined that the very same transaction was regarded as too risky for Lifespan to engage in itself. Had such unethical conflict or Lifespan's rejection of the transaction been disclosed, NEMC would not have entered into the Interest Rate Swap Transaction. Rather, Lifespan compelled NEMC to enter into an Interest Rate Swap Transaction with Morgan Stanley that resulted in losses of millions of dollars to NEMC.

17. NEMC reasonably and justifiably relied upon the foregoing misrepresentations to its detriment and such reliance caused NEMC substantial damages.

18. In addition to the provisions requiring Lifespan to indemnify NEMC for certain losses, as described above, the Restructuring Agreement provides for NEMCI and NEMCH to, in the aggregate, pay $30 million to Lifespan, in accordance with the schedule set forth in Section 2.2 of the Agreement. To date, NEMCI and NEMCH have paid $26.34 million to Lifespan

pursuant to the Restructuring Agreement. But for the indemnification provision found in Section 7.2 of the Restructuring Agreement, Section 2.2.3 called for additional payments of $1.83 million on January 2, 2006 and on January 2, 2007.

19. Because the losses for which Lifespan is contractually required to indemnify NEMC substantially exceed the remaining said $3.66 million, NEMCI does not owe Lifespan any further payments under the Restructuring Agreement.

**COUNT I: CONTRACTUAL INDEMNIFICATION CLAIM**

20. The allegations contained in Paragraphs 1 through 19 are incorporated herein by reference and are realleged in their entirety.

21. In the Restructuring Agreement, the parties agreed that "Lifespan will indemnify NEMC for any losses it incurs that result directly and solely

> (x) from Lifespan's willful misconduct or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the Affiliation Period [October 31, 1997 through October 31, 2002] **or**
>
> (y) from a material obligation that was approved by the Board of Directors of LOM, acting as sole member of NEMCI or NEMCH, as the case may be, but not otherwise, where such action was taken without the knowledge, consent, ratification or approval of the chief executive officer, chief financial officer or any trustee of NEMCI or NEMCH or any of the NEMC Affiliates."

Restructuring Agreement ¶ 7.2 (emphasis added).

22. NEMC has incurred substantial losses resulting directly and solely from Lifespan's willful misconduct and/or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the Affiliation Period, including but not limited to the conduct described above.

23. NEMC has also incurred substantial losses resulting directly and solely from material obligations that it incurred as a result of actions that were approved by the Board of

Directors of LOM, acting as sole member of NEMCI or NEMCH, and that were taken without the knowledge, consent, ratification or approval of the chief executive officer, chief financial officer or any trustee of NEMCI or NEMCH or any of the NEMC Affiliates, including but not limited to the conduct described above.

24. In addition, in the Restructuring Agreement, the parties agreed, among other things, that Lifespan shall indemnify NEMC for any losses it incurred or suffered as a result of, arising out of or directly or indirectly relating to any misrepresentation by Lifespan. Restructuring Agreement ¶ 7.2(a).

25. NEMC has incurred substantial losses as a result of, arising out of or directly or indirectly relating to intentional and/or negligent misrepresentations (affirmatively or by concealment) by Lifespan concerning the provision of services to NEMC. Such intentional and/or negligent misrepresentations were false when made and Lifespan knew or should have known through reasonable care or competence of such falsity. NEMC reasonably and justifiably relied upon the foregoing misrepresentations to its detriment and such reliance caused NEMC to lose millions of dollars.

26. Pursuant to Section 7.2 of the Restructuring Agreement, NEMC seeks indemnification from Lifespan for all of the losses NEMC has incurred and that fall within the scope of that provision.

**COUNT II: BREACH OF FIDUCIARY DUTY**

27. The allegations contained in Paragraphs 1 though 26 are incorporated herein by reference and are realleged in their entirety.

28. Lifespan owed NEMC fiduciary duties of care and loyalty during the Affiliation Period.

29. Lifespan breached those fiduciary duties by their conduct, including but not limited to the conduct described above.

30. NEMC has suffered damages, and continues to suffer damages, that were proximately caused by these breaches of fiduciary duty by Lifespan and LOM.

**COUNT III: UNJUST ENRICHMENT**

31. The allegations contained in Paragraphs 1 though 30 are incorporated herein by reference and are realleged in their entirety.

32. By its conduct during the Affiliation Period, including but not limited to the conduct described above, Lifespan misappropriated, and wrongfully diverted for their own benefit, the corporate assets of NEMC.

33. As a result, Lifespan was unjustly enriched at the expense of NEMC.

34. NEMC therefore seeks restitution and disgorgement of the profits earned by Lifespan as a result of this wrongful conduct by Lifespan and LOM.

**COUNT IV: CLAIM PURSUANT TO G.L. c. 93A, § 11**

35. The allegations contained in Paragraphs 1 though 34 are incorporated herein by reference and are realleged in their entirety.

36. In connection with the dealings between the parties, NEMC and Lifespan and were engaged in trade or commerce in Massachusetts as defined by G.L. c. 93A and all transactions at issue herein occurred primarily and substantially within the Commonwealth of Massachusetts.

37. Lifespan willfully or knowingly engaged in unfair or deceptive acts or practices in its conduct toward NEMC, including but not limited to the conduct described above.

38. NEMC has suffered damages, and continues to suffer damages, as a proximate result of the unfair or deceptive acts or practices employed by Lifespan.

## PRAYER FOR RELIEF

**WHEREFORE** New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively "NEMC") respectfully request that this Court:

(a) Enter judgment in favor of NEMC and against Lifespan on all claims and counterclaims;

(b) Enforce the indemnification provision found in Section 7.2 of the Restructuring Agreement and enter an Order requiring Lifespan to indemnify NEMC for all of the losses covered by that provision;

(c) Award NEMC the damages it suffered as a result of the breaches of fiduciary duty committed by Lifespan;

(d) Order Lifespan to disgorge the profits it earned from its wrongful misappropriation and/or diversion of NEMC's assets;

(e) Award NEMC double or treble damages and its attorneys' fees pursuant to G.L. c. 93A, § 11;

(f) Award NEMC its costs and expenses in this Action, including attorneys' fees;

(g) Award NEMC prejudgment interest; and

(h) Grant such other relief as this Court deems fair and just.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and
NEW ENGLAND MEDICAL CENTER
HOSPITALS, INC.,

By their attorney,

*<u>/s/ David A. Wollin</u>*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
E-Mail: dwollin@apslaw.com
Phone: 401.274.7200
Fax: 401.351.4607
Dated:

**CERTIFICATE OF SERVICE**

I hereby certify that on this ___day of July, 2007, I sent a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

*/s/ David A. Wollin*

421313_1.doc