UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>VS.<br><br>NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.<br><br>Defendants. | ) | C. A. No. 06-421T |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively "NEMC") respectfully object to Plaintiff Lifespan Corporation's motion for summary judgment. The grounds for this objection are set forth in the accompanying memorandum of law, the Declaration of Ellen Zane, the Statement of Disputed Facts and Counterstatement of Undisputed Facts.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.,

By their attorney,

*/s/ David A. Wollin*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

E-Mail: dwollin@apslaw.com
Phone: 401.274.7200
Fax: 401.351.4607
Dated: September 11, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September, 2007, I did send a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

*/s/ David A. Wollin*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION, | ) | |
| Plaintiff, | ) | |
| VS. | ) | C. A. No. 06-421T |
| NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC. | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively "NEMC") respectfully submit this memorandum of law in support of their objection to Plaintiff Lifespan Corporation's ("Lifespan") motion for summary judgment.

Lifespan's motion for summary judgment should be denied. Where, as here, the plaintiff's claims arises out of the same contract as the defendants' much larger counterclaim, summary judgment should be withheld until the counterclaim is resolved. As a federal appeals court noted long ago in an identical case involving a single contract, "[t]he plaintiff is not at liberty to select an isolated act or fact, which is only one of a series of acts or steps in the entire transaction, and insist upon a judgment on this fact alone." *Parmelee v. Chicago Eye Shield Co.*, 157 F.2d 582 (8th Cir. 1946). On the other hand, all of the cases on which Lifespan rely involve counterclaims that were separate

and distinct from the claim at issue in the motion and thus summary judgment was appropriate. Such is not the case here.

**FACTS**

As of September 30, 2002, Lifespan and NEMC entered into a Restructuring Agreement, a copy of which is attached to Lifespan's complaint as Exhibit A. Plaintiff's Statement of Undisputed Facts at ¶ 4. Under Section 2.2.3 of the Restructuring Agreement, New England Medical Center, Inc. agreed to pay Lifespan, and New England Medical Center Hospitals, Inc. agreed to guarantee, the sum of $1.83 million on January 2, 2006 and $1.83 million on January 2, 2007. *Id*. at ¶¶ 5-6. However, Section 2.2.3 of the Agreement is subject to other provisions, particularly Section 7.2. Defendants' Counterstatement of Undisputed Facts at ¶ 3. That is, the payments due from New England Medical Center, Inc., and guaranteed by New England Medical Center Hospitals, Inc., in Section 2.2.3 of the Restructuring Agreement are not owed and need not be paid to the extent that Lifespan's indemnification obligations to NEMC under Section 7.2 of the Restructuring Agreement exceed the amounts in Section 2.2.3. *Id.*

Under Section 7.2(a) of the Restructuring Agreement, Lifespan agreed to indemnify and hold harmless NEMC for any and all losses it incurred or suffered as a result of, arising out of or directly or indirectly relating to any misrepresentation by Lifespan. Defendants' Statement of Undisputed Fact at ¶ 1. In addition, under Section 7.2 of the Restructuring Agreement, Lifespan agreed to indemnify and hold harmless NEMC for any losses it incurred or suffered that result directly and solely:

> "(x) from Lifespan's willful misconduct or gross negligence in the provision of services to NEMC by Lifespan employees working under the

> direction and supervision of Lifespan employees during the Affiliation Period [October 31, 1997 through October 31, 2002] or
>
> (y) from a material obligation that was approved by the Board of Directors of LOM [Lifespan of Massachusetts], acting as sole member of NEMCI or NEMCH, as the case may be, but not otherwise, where such action was taken without the knowledge, consent, ratification or approval of the chief executive officer, chief financial officer or any trustee of NEMCI or NEMCH or any of the NEMC Affiliates."

*Id*. at ¶ 2. NEMC disputes that it owes any money to Lifespan under Section 2.2.3 of the Restructuring Agreement because Lifespan's indemnification obligations to NEMC under Section 7.2 of the Restructuring Agreement, as outlined in NEMC's Amended Counterclaim, exceed the amounts set forth in Section 2.2.3. Defendants' Statement of Disputed Facts at ¶¶ 7-8.

Both Lifespan's claims and Defendants' first counterclaim are based on the Restructuring Agreement. Specifically, Lifespan's claims (Counts I and II) are based on Section 2.2.3 of the Restructuring Agreement. Count I of NEMC's Amended Counterclaim, a contractual indemnification claim, is based on Section 7.2 of that Agreement.

## ARGUMENT

Lifespan's motion for summary judgment should be denied. This Court should reject Lifespan's argument that it can focus on only one provision in the Restructuring Agreement and secure a favorable judgment when other provisions in that very same contract negate the payments Lifespan is seeking to obtain. Both courts and commentators addressing this very situation have concluded that summary judgment would be improper in these circumstances. That is, "summary judgment should be

withheld if a plaintiff asserting a small claim is confronted with a much larger counterclaim that is intimately related to the facts of the plaintiff's claim, even if the plaintiff's claim is not disputed." 73 Am Jur 2d, *Summary Judgment* § 44. *See also* 35B C.J.S. *Federal Civ. Proc.* § 1162 (2003) ("where, although there is no dispute as to the correctness of the plaintiff's claim, the defendant contends that there is no amount due and owing because of his or her counterclaim for a greater amount, and there is a dispute of fact as to the counterclaim, summary judgment may not be granted on the plaintiff's claim.").

In this case, Lifespan's claims and Count I of Defendants' Amended Counterclaim are intimately related since they involve the same contract and address the same issues – payment obligations owed to the other party – and thus summary judgment is inappropriate. The case of *Parmelee v. Chicago Eye Shield Co.*, 157 F.2d 582 (8th Cir. 1946), is directly on point because in that case both the plaintiff's claims and the counterclaims were based on the same distributorship agreement, and the defendant alleged that its claims were in excess of the amount claimed by the plaintiff. In *Parmelee*, the plaintiff alleged that defendant had failed to pay for goods sold under a distributor agreement and moved for summary judgment. *Id*. at 584. The defendant admitted that it had purchased and received the goods and further agreed that the invoices supporting plaintiff's claim were correct. *Id*. However, the defendant denied that it was indebted to the plaintiff in any amount, because the plaintiff had breached the distributor agreement and owed damages far in excess of the plaintiff's demand (which was the subject of the defendant's counterclaim). *Id*. at 584-85. The district court granted

plaintiff's motion for summary judgment, but the Eighth Circuit reversed, ruling that summary judgment was improper under these circumstances:

> [Summary judgment] is generally considered as a drastic remedy and strict compliance with the provisions of the rule is required. A number of the District Courts have held that the existence of a counter-claim which presents a real issue prevents the granting of a motion for summary judgment. In the instant case, defendant denied that it was indebted to the plaintiff in any amount whatever, and alleged that by reason of the counter-claims defendant was entitled to recover of the plaintiff an amount far in excess of plaintiff's demand. This tendered an issue of fact.

*Id.* at 587 (citations omitted). Likewise, since Lifespan's claims and NEMC's contractual indemnification claim arise from the Restructuring Agreement, and NEMC claims that it does not owe Lifespan any money because its non-frivolous counterclaim would exceed Lifespan's claims, summary judgment should be denied.

A similar result was reached in *Precision Industries v. Behnke Lubricants, Inc.*, 396 F. Supp.2d 1012 (S.D. Iowa 2005). That case followed *Parmelee* in denying the defendants' motion for summary judgment on their counterclaim for breach of contract when the plaintiff's claims were based in part on the same distribution agreement at issue in the counterclaim. *Id*. at 1014-15, 1018. The defendants' counterclaim for breach of contract was for amounts owed for products delivered to its distributor, plaintiff Precision. *Id*. at 1015. Likewise, the plaintiff's complaint alleged, in part, that the defendants had breached the distribution agreement. *Id.* at 1015, 1018. Relying on *Parmelee*, the court held that summary judgment was inappropriate because the claims and counterclaim were part of the same transaction. *Id.* at 1018-1019.

What Lifespan is attempting here is to isolate a single contractual provision in its favor to the exclusion of all other adverse contractual provisions and secure summary

judgment. This was the kind of conduct that the Eighth Circuit disapproved in *Parmelee* when it observed:

> ‘The plaintiff is not at liberty to select an isolated act or fact, which is only one of a series of acts or steps in the entire transaction, and insist upon a judgment on this fact alone, if the fact is so connected with others that it forms only a portion of the transaction. The transaction which was the foundation of the cause of action set forth in the complaint herein is not limited to the facts therein set forth, but includes the entire series of acts and mutual conduct of the parties in the business or proceeding between them which formed the basis of their written agreement.’

*Parmelee*, 157 F.2d at 586 (citations omitted). Thus, where, as here, Lifespan’s claims are closely related to NEMC’s contractual indemnification claim, the entry of summary judgment would be improper. *TPO, Inc. v. Federal Deposit Ins. Corp.*, 487 F.2d 131, 134 (3d Cir. 1973) (“[Our] opinion is in accord with other authority which questions the advisability of the entry of judgment against one party if it appears that ultimately he may recover judgment against the moving party after trial. *See* 3 Barron & Holtzhoff, Federal Practice & Procedure § 1241. Particular caution also must be exercised when the claim and the counterclaim are so closely related that an issue of fact in one may prove to be important to both.”); *Alsheimer v. Evarts*, 289 A.D.2d 1004, 734 N.Y.S.2d 788, 788 (N.Y. Sup. Ct. App. Div. 4th 2001) (“When a viable counterclaim arises from the same underlying transaction as is involved in the main action and is inseparable from or inextricably intertwined with that transaction, summary judgment should be denied.”).

All the cases on which Lifespan relies involved, unlike the instant case, counterclaims that were separate and distinct from the claim at issue in the summary judgment motion. None of the cases involved claims and counterclaims based on a single contract, as in *Parmelee* and this case. For instance, in *Chemetron Corp. v. Cervantes*, 92 F.R.D. 26 (D.P.R. 1981), the plaintiff Chemetron moved for summary judgment seeking

payment on a promissory note related to a loan extended by Chemetron to its employee, defendant Cervantes. The promissory note and the associated loan agreement provided that Cervantes would pay Chemetron $20,000 on demand if Cervantes ceased working for the company or its affiliates. *Id*. at 28. A separate Employee Transfer Agreement was entered into between Chemetron and Cervantes regarding the transfer of Cervantes' employment from Chemetron to a subsidiary company. *Id*. Thereafter, Cervantes worked for Chemetron's subsidiary and was later terminated and demand was made under the promissory note for the $20,000. *Id*. The court ruled that summary judgment could enter on Chemetron's discrete undisputed claim: nonpayment under the promissory note where Cervantes admitted he had not paid the amount of the loan and failed to pay on demand. *Id*. at 29-31. However, in that case, summary judgment was appropriate because the defendant's counterclaim for "severance compensation," although compulsory, was not based on or related to the undisputed contractual obligation for payment under the promissory note but was an "independent" claim. *See id.* at 30 (noting that summary judgment is appropriate "[o]nce the independent nature of the claim is established") (quoting *Schroeter v. Ralph Wilson Plastics, Inc.*, 49 F.R.D. 323, 326 (S.D. N.Y. 1969)).[1]

Likewise, in *Schroeter*, the complaint and counterclaims raised entirely different issues. The plaintiffs in *Schroeter* claimed that the defendant had engaged in discriminatory pricing practices in violation of antitrust laws. 49 F.R.D. at 324. The defendant counterclaimed for amounts owed by the plaintiffs pursuant to a loan

[1] Although the court did not state explicitly, Cervantes' counterclaim appears to be based on the Employee Transfer Agreement which included "mutual promises and agreements entered into as part of the transfer of employment" of Cervantes to Chemetron's subsidiary. *Id*. at 28.

agreement and moved for summary judgment. *Id*. Noting that the plaintiffs admitted that they entered into the loan, that plaintiff Schroeter guaranteed payment, that the plaintiffs had failed to pay within the three-year term of the loan, and that they raised no defense to the alleged nonpayment, the court ruled that summary judgment was proper on the amount owed to the defendant. *Id*. at 326. Significantly, the court found that the "subject matter of these counterclaims is wholly distinct and separate from both the transactions and legal theories underlying the complaint" and thus the counterclaims did not preclude entry of summary judgment. *Id*. *Schroeter* is readily distinguishable from this case as the court in *Schroeter* was not addressing the issue of whether summary judgment would be appropriate on a complaint where the counterclaim involves a competing provision in the same contract.

Similarly, *Carpenters Local Union No. 971 v. Clyne*, 580 F. Supp. 1256 (D. Nev. 1984), is inapplicable. There, the plaintiff union sought to recover contributions paid under a master labor agreement ("MLA") in effect until June 30, 1980 on account of fringe benefits for the benefit of defendant contractor's employees. *Id*. at 1257. The defendant counterclaimed for reimbursement of monthly contributions that were made over a three-month period under the new MLA in effect after June 30, 1980, claiming that they were not required and in any event were made under duress. *Id*. The court ruled that summary judgment was appropriate on plaintiff's claim under the pre-June 30, 1980 MLA to recover contributions and was not precluded by defendants' counterclaim, which was based on the post-June 30, 1980 MLA. *Id*. at 1258. Again, the plaintiff's claim was based on a different agreement than the defendant's counterclaim.

In the Massachusetts case cited by Lifespan, *Acme Engineering and Manufacturing Corp. v. Airadyne Company, Inc.*, 404 N.E.2d 693 (Mass. App. Ct. 1980), the plaintiff was granted summary judgment on its claim for goods sold. The defendant's counterclaim was in the nature of tortious interference with business relations and included allegations that the plaintiff induced one of the defendant's employees to leave the company to establish a competing distributorship and had otherwise engaged in activities intending to damage the defendant's business. *Id.* at 695. The appeals court upheld the trial court's ruling that defendant's allegations were a "wholly independent claim" and thus did not preclude summary judgment on plaintiff's claim. *Id.*

Finally, Lifespan cites to 8 A.L.R. 3d 1361 § 5.5 for the proposition that the pendency of a counterclaim is no bar to entry of summary judgment on the main claim. However, the section cited merely provides examples of cases, such as *Carpenters Local Union No. 971*, wherein courts have held generally that summary judgment may be appropriately entered in spite of the existence of a counterclaim. The preceding section, 8 A.L.R. 3d 1361 § 5, states the "general rule" that "the presence of a counterclaim predicated upon a good and substantial cause justifying a trial may bar a plaintiff's motion for summary judgment on his complaint or may preclude the court from ordering execution of the judgment pending the determination of the counterclaim."[2]

In short, summary judgment would be inappropriate in this case because Lifespan's claims and NEMC's contractual indemnification claim are intimately related – they are predicated on competing payment obligations under the same contract. As the Court noted during the summary judgment conference, it is one thing to say at this

---

[2] Lifespan also relies upon *Anderson v. United States*, 182 F.2d 296 (1st Cir. 1950). That case is inapplicable because the counterclaim in that case, unlike here (as Lifespan admits), was "completely unintelligible." *Id.* at 297.

juncture that certain issues need not be tried – *e.g.*, what the Restructuring Agreement provides in Sections 2.2.3 and 7.2 and whether NEMC made any payments under Section 2.2.3. It is quite another to say that the Court should cast a blind eye to Section 7.2 and instead enter summary judgment in Lifespan's favor on only one contractual provision. Since NEMC has a viable, good-faith basis for its contractual indemnification claim, particularly where that claim substantially exceeds the $3.66 million in payments that Lifespan seeks under Section 2.2.3 of the Restructuring Agreement, Lifespan's motion for summary judgment should be denied.

## CONCLUSION

For the foregoing reasons, NEMC respectfully requests that Lifespan's motion for summary judgment be denied.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.,

By their attorney,

*/s/ David A. Wollin*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
E-Mail: dwollin@apslaw.com
Phone: 401.274.7200
Fax: 401.351.4607
Dated: September 11, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September, 2007, I did send a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

*/s/ David A. Wollin*

427767_1.doc