UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>VS.<br><br>NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.<br><br>Defendants. | ) | C. A. No. 06-421T |

**DEFENDANTS' MOTION TO STRIKE CERTAIN ENTRIES FROM**
**DAVID LANTTO'S DEPOSITION ERRATA SHEET**

Defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. respectfully move to strike the following entries from the deposition errata sheet of David Lantto, former Chief Financial Officer of Plaintiff Lifespan Corporation: Page 208, Line 16, and Page 209, Line 10. In both instances, Mr. Lantto has submitted diametrically opposite answers from the ones he gave under oath at his deposition. Mr. Lantto does not cite errors in the stenographer's record of his testimony, but instead says, "I remembered this point during my reading of the deposition." For the reasons set forth in the accompanying memorandum of law, those entries in Mr. Lantto's errata sheet should be stricken.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and
NEW ENGLAND MEDICAL CENTER
HOSPITALS, INC.,

By their attorney,

*/s/ David A. Wollin*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
E-Mail: dwollin@apslaw.com
Phone: 401.274.7200
Fax: 401.351.4607
Dated: June 11, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of June, 2008, I did send a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

*/s/ David A. Wollin*

457625_1.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>VS.<br><br>NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.<br><br>Defendants. | ) | C. A. No. 06-421T |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE CERTAIN ENTRIES FROM <u>DAVID LANTTO'S DEPOSITION ERRATA SHEET</u>**

Defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively "NEMC") respectfully submit this memorandum of law in support of their motion to strike the following entries from the deposition errata sheet of David Lantto, former Chief Financial Officer of Plaintiff Lifespan Corporation ("Lifespan"): Page 208, Line 16, and Page 209, Line 10. In both instances, Mr. Lantto has submitted diametrically opposite answers from the ones he gave under oath at his deposition on significant issues in this case. Specifically, during the January 9, 2008 deposition, he admitted under oath that he violated Lifespan's conflict of interest policy and its entertainment, gifts and vendor promotional policy at the relevant time in this case. In his errata sheet, however, he has changed his sworn answers and states he did not violate any policies, offering an entirely new explanation for his answer. This stark about-face is not permitted by Fed. R. Civ. P. 30(e) and should be stricken.

## BACKGROUND

In this lawsuit, NEMC has brought counterclaims against Lifespan arising from the time in 1997 through 2002 that NEMC was an affiliated hospital under the Lifespan umbrella. In Count I, NEMC alleges, *inter alia*, that Lifespan is liable under paragraph 7.2(a) of the parties' Restructuring Agreement which requires Lifespan to indemnify NEMC for any losses it incurred or suffered as a result of, arising out of, or directly or indirectly relating to any misrepresentations by Lifespan. NEMC alleges that, prior to Lifespan requiring NEMC to enter into an interest rate swap in 2002, Lifespan misrepresented, by failing to disclose, that David Lantto, Lifespan's former Chief Financial Officer and the senior Lifespan executive promoting the interest rate swap transaction to NEMC, had an impermissible and unethical conflict of interest with Jeff Seubel, the principal proponent of the transaction at the swap brokerage house, Morgan Stanley, that disqualified Lantto from being involved in promoting the transaction. Had such unethical conflict been disclosed, NEMC alleges, NEMC would not have entered into the interest rate swap transaction. The swap transaction eventually resulted in losses of NEMC of millions of dollars.[1]

On January 9, 2008, after much delay, David Lantto flew from Arizona, where he is retired, and was deposed in Rhode Island. Because he is no longer within the jurisdiction of the Court, he is not expected to be a live witness at trial. Certainly, NEMC has no ability to subpoena him to travel to Rhode Island for trial.

During the deposition, Mr. Lantto was extensively questioned about his substantial role at Lifespan in promoting the interest rate swap transaction to NEMC and his long-standing personal

[1] NEMC also alleges that, prior to NEMC entering into the interest rate swap transaction, Lifespan affirmatively misrepresented the risks of the transaction and failed to disclose that Lifespan had determined that the same swap transaction was regarded as too risky for Lifespan to engage in for the Rhode Island-based hospitals.

relationship with Jeff Seubel, the key broker at Morgan Stanley. Mr. Lantto, it was revealed, had an extensive personal relationship with Jeff Seubel, all unbeknownst to NEMC at the time it was considering the interest rate swap. Indeed, long after the swap had done its damage to NEMC, Lifespan conducted an internal investigation and concluded that Lantto had an impermissible conflict of interest. That internal investigation did not come to NEMC's attention until the report was required to be produced in this litigation. Exhibit 1.

During the deposition, Mr. Lantto was asked whether he violated two Lifespan conflict of interest policies in effect at the time: Lifespan's conflict of interest policy and its entertainment, gifts and vendor promotional policy. On page 208 (lines 5-16), of his deposition, after being walked through the terms of the entertainment, gifts and vendor promotional policy, Lantto was asked if his acceptance of overnight lodging at Jeff Seubel's home was a violation of that policy. Exhibit 2. In a moment of candor, at line 16, Lantto testified: "In that regard I guess it would." *Id*. Then, he was asked at pages 208-09 if his acceptance of overnight lodging violated Lifespan's conflict of interest policy; Lantto answered on page 209, line 10: "Technically it did." *Id*.

In a stark 360 degree turn, Lantto has submitted an errata sheet completely changing his answers to those questions. In his errata sheet, he changes his admission that he violated Lifespan's entertainment, gifts and vendor promotional policy ("In that regard I guess it would.") to the following: "No, because no cost was involved to Mr. Seubel and I believe travel refers to air fare, hotel or car rental costs." Exhibit 3. His only explanation for the change: "I remembered this point during my reading of the deposition." *Id*. Similarly, in his errata sheet, he changes his admission that he violated Lifespan's conflict of interest policy ("Technically it did.") to the following: "No, for the point previously mentioned." *Id*. Again, no explanation is

offered for the change except for the following: "I remembered this point during my reading of the deposition." *Id*.

For the reasons set forth below, Mr. Lantto's newfound, contradictory answers should be stricken.

## ARGUMENT

"A deposition is not a take home examination." *Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D. Lo. 1992).

Rule 30(e) of the Federal Rules of Civil Procedure provides that, on request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript is available to review the transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Although Rule 30(e) allows a deponent to make changes in "form or substance," most of the circuit courts that have considered this issue have concluded that the Rule only allows for corrective, and not contradictory, answers. *See, e.g., Hambleton Brothers Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225-26 (9th Cir. 2005); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002); *Thorn v. Sundrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).[2] Moreover, in *Crowe v. Marchand*, C.A. No. 05-98-T, 2006 WL 5230014, at *1 (D.R.I. 2006), this Court (Torres, J.) has reached the same conclusion, in reliance on the Ninth Circuit's decision in *Hambleton*. As this Court noted in *Crowe*, "the purpose of an errata sheet is to correct alleged inaccuracies in what the deponent said at his deposition, not to modify what the deponent said for tactical reasons or to reflect what he wishes that he had said."

---

[2] *But cf. Podell v. Citicorp. Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) (allowing timely corrections, even if they contradict original answers, but the original answer to the deposition question remains part of the record and can be read at trial).

*Id*. If the rule were otherwise, a deponent could merely answer the questions with no thought at all and then return home and plan artful responses after the deposition has closed. *Garcia*, 299 F.3d at 1242 n.5. Indeed, permission to do what occurred here would allow a party to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment. *Hambleton*, 397 F.3d at 1225.

NEMC submits a similar result follows from the First Circuit's decision in *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). In *Colantuoni*, the First Circuit adopted the "sham affidavits" rule to prohibit a party from attempting to defeat summary judgment by submitting an affidavit contradicting the party's previous deposition testimony. *Id*. *Accord, Bard v. Mark Steven CVS, Inc.*, 378 F. Supp.2d 33, 39 (D.R.I. 2005). Here, an errata sheet that seeks to contradict a previous deposition answer under oath is no different than the affidavit in *Colantuoni*. Indeed, this analogy was the very basis on which the Ninth Circuit in *Hambelton* and the Tenth Circuit ruled that Rule 30(e) did not permit contradictory changes. *Hambleton*, 397 F.3d at 1225; *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1281-82 (10th Cir. 2003). As the Tenth Circuit noted, "We see no reason to treat Rule 30(e) corrections differently than affidavits, and we hold that [plaintiff's] attempt to amend his deposition testimony must be evaluated under [the sham affidavit doctrine]." *Burns*, 330 F.3d at 1281-82.

Based on the foregoing authorities, Mr. Lantto's proposed changes should be stricken. His errata sheet -- particularly Page 208, Line 16, and Page 209, Line 10 -- gives diametrically opposite, contradictory answers from the admissions he gave under oath at his deposition, more than thirty days prior, that he violated Lifespan's conflict of interest policy and its entertainment, gifts and vendor promotional policy. His contradictory changes are particularly pernicious for NEMC because he is not subject to the subpoena power of the Court and will not be a live

witness at trial. NEMC is unable to challenge his newfound answers or his self-serving explanations for the changes, at the particular prejudice to NEMC and the general prejudice to the adversarial system of justice. As noted above, a deposition is not a take-home exam. *Greenway*, 144 F.R.D. at 325.

The underlying rationale for striking contradictory changes is compelling. Contemporaneous answers at a deposition are likely to be more truthful and accurate than responses carefully crafted days or weeks later, potentially with the assistance of counsel. Striking contradictory answers preserves the integrity of the deposition testimony and ensures the testimony is the witness's own. The same is not true if deponents are allowed to change their sworn deposition testimony after the fact.

In short, Mr. Lantto's contradictory changes should be stricken in this case.

## CONCLUSION

For the foregoing reasons, NEMC requests that the Court grant its motion to strike.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and
NEW ENGLAND MEDICAL CENTER
HOSPITALS, INC.,

By their attorney,

*/s/ David A. Wollin*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
E-Mail: dwollin@apslaw.com
Phone: 401.274.7200
Fax: 401.351.4607
Dated: June 11, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of June, 2008, I did send a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

*/s/David A. Wollin*

*457625_1.doc*