UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| LIFESPAN CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C. A. No. 06-421-T-DLM |
| ) | |
| NEW ENGLAND MEDICAL ) | |
| CENTER, INC., AND NEW ENGLAND ) | |
| MEDICAL CENTER HOSPITALS, INC., ) | |
| ) | |
| Defendants. ) | |

## ATTORNEY GENERAL'S MOTION TO INTERVENE AS OF RIGHT, OR ALTERNATIVELY FOR PERMISSIVE INTERVENTION

The Massachusetts Attorney General respectfully moves this Court, pursuant to Rule 24 of the Federal Rules of Civil Procedure, for leave to intervene as a defendant in this action to represent the public interest in Massachusetts public charities and to file an answer and counterclaim. As more fully set forth in the accompanying memorandum of law, the grounds for this motion are as follows:

(1)    The Attorney General is entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) because: (a) she has a significant interest, pursuant to her exclusive statutory authority to represent the public interest in the due application of charitable funds, in enforcing the fiduciary duties which plaintiff Lifespan Corporation ("Lifespan") owed to the defendant Massachusetts public charities, New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively, "NEMC"); and (b) if the Attorney General is not allowed to intervene, her interest will be impaired because NEMC cannot adequately enforce those fiduciary duties.

(2)     Alternatively, and supplementally, the Attorney General meets the requirements

for permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2) because (a) NEMC's fiduciary

duty claim is based on the state enforcement statute administered and enforced by the Attorney

General; and (b) the Attorney General's intervention at this stage of the litigation would not

unduly delay or prejudice the adjudication of the original parties' rights, because the Attorney

General's counterclaim will address an existing issue in this action: whether Lifespan violated

fiduciary duties it owed to NEMC.

The Attorney General therefore respectfully requests that this Court enter an order

allowing her to intervene as a defendant and to file the proposed answer in intervention and

counterclaim attached hereto.

RESPECTFULLY SUBMITTED,

MARTHA COAKLEY
ATTORNEY GENERAL

BY:  /s/ Christopher E. Hultquist _____

Christopher E. Hultquist  (#5264)
Special Assistant Attorney General
DarrowEverett LLP
1 Turks Head Place – Suite 500
Providence, RI 02903
Tel:  (401) 453-1200
Fax:  (401) 453-1201
Email:  chultquist@darroweverett.com

Eric Carriker, Assistant Attorney General
        (pro hac vice admission pending)
Jonathan Green, Assistant Attorney General
        (pro hac vice admission pending)
Non-Profit Organizations/
Public Charities Division
One Ashburton Place, Room 1813
Boston, MA 02108
(617) 727-2200
Dated: July 18, 2008                    (617) 727-2920 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of July, 2008, I filed the Attorney General's Motion to Intervene as of Right, or Alternatively for Permissive Intervention, electronically, and it is available for viewing and downloading from the (ECF) system. I sent a true copy of the within document by electronic means (ECF) to the following counsel of record:

David A. Wollin, Esq.
dwollin@apslaw.com

Jeffrey T. Rotella, Esq.
jrotella@apslaw.com

Deming E. Sherman, Esq.
dsherman@eapdlaw.com

/s/ Christopher E. Hultquist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LIFESPAN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  C. A. No. 06-421-T-DLM |
| | ) |
| NEW ENGLAND MEDICAL | ) |
| CENTER, INC., AND NEW ENGLAND | ) |
| MEDICAL CENTER HOSPITALS, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF ATTORNEY GENERAL'S
MOTION TO INTERVENE AS OF RIGHT, OR ALTERNATIVELY
FOR PERMISSIVE INTERVENTION**

The Massachusetts Attorney General submits this memorandum of law in support of her motion to intervene in this matter involving claims that the plaintiff, Lifespan Corporation, breached fiduciary duties that it owed to the defendants, defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively, "NEMC"). The Attorney General has exclusive statutory authority to represent the public interest in the due application of Massachusetts charitable funds, and therefore has a clear and direct interest in the issues raised in this case. As set forth herein, this Court should grant the Attorney General's motion to intervene.

**I.    STATEMENT OF THE CASE.**

Following joint negotiations with the Massachusetts Attorney General's office, Lifespan, a Rhode Island hospital corporation, entered into an affiliation agreement with

1

NEMC in 1997 under which NEMC, a Massachusetts public charity, joined a hospital network controlled by Lifespan. (Attachment 1; the "Affiliation Agreement".) The relationship ended in 2002 when the parties negotiated a restructuring agreement (the "Restructuring Agreement"). Thereafter, a dispute developed regarding payments NEMC owed Lifespan under the Restructuring Agreement. In 2006, Lifespan filed this action as a contract claim seeking payment of NEMC's debt. (Docket No. 1.) In response, NEMC filed an action against Lifespan in Massachusetts state court, asserting that Lifespan had abused its relationship with NEMC to advantage Lifespan by misappropriating NEMC's funds and that Lifespan had grossly neglected certain responsibilities owed to NEMC. NEMC alleged that Lifespan's conduct constituted both a violation of fiduciary duties it owed to NEMC and unfair and deceptive practices.

The Massachusetts state court granted Lifespan's motion to stay the state court proceeding during the pendency of this action. Following this, NEMC amended its answer in this action to include a compulsory counterclaim which, *inter alia*, incorporated the allegations it had raised in state court. (Docket No. 37.) Lifespan moved for summary judgment on its contract claim under the Restructuring Agreement (Docket No. 41), but this Court denied the motion, finding that those issues were not separable from NEMC's counterclaim. (Docket No. 66.)

The Massachusetts Attorney General seeks intervention as of right or, alternatively, permissive intervention, in her regulatory role over Massachusetts public charities, to ensure the due application of NEMC's charitable assets which Lifespan has misappropriated. The Attorney General seeks to file an answer and a counterclaim which mirrors NEMC's counterclaim, asserting that Lifespan violated fiduciary duties which it

owed to NEMC. As detailed below, NEMC cannot adequately represent the Attorney General's interests in enforcing Lifespan's fiduciary duties to NEMC, and Lifespan will not be prejudiced by the Attorney General's intervention in this proceeding.

**II.    THE ATTORNEY GENERAL'S MOTION TO INTERVENE AS OF RIGHT UNDER RULE 24(a) IS TIMELY AND NEMC CANNOT ADEQUATELY PROTECT THE ATTORNEY GENERAL'S INTEREST IN ENFORCING FIDUCIARY DUTIES LIFESPAN OWED TO NEMC.**

To intervene as of right under Fed. R. Civ. P. 24(a)(2), the Attorney General must establish four conditions: (1) her motion is timely, (2) the Attorney General has an interest relating to the property or transaction that forms the basis of the action, (3) the disposition of the action may as a practical matter impair or impede the Attorney General's ability to protect that interest, and (4) the Attorney General's interest is not adequately represented by existing parties. Fernandez v. Kellogg USA, Inc., 440 F.3d 541, 544-45 (1st Cir. 2006).

These various components of Rule 24(a)(2) are not bright lines, but rather ranges, and the requirements for intervention must be read in the context of the particular statutory scheme that is the basis for the litigation, and with an eye to the posture of the litigation at the time the motion is decided. United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984) (Friendly, J.). This rule was designed with the more traditional private action in mind, and its adaptation to other contexts requires a flexible reading of its provisions. Id. See also Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967).

**A.**  **The Attorney General Has A Significant Public Interest In Enforcing Lifespan's Fiduciary Duties Owed To NEMC, A Massachusetts Public Charity.**

The Supreme Court has held that a proposed intervenor must demonstrate a "significantly protectable" interest. Donaldson v. United States, 400 U.S. 517, 531 (1970). The First Circuit has declined to adopt a bright-line rule with respect to the requisite interest, instead emphasizing that "there is no precise and authoritative definition of the interest required" and reiterating that the applicant must be in a "significantly close relationship" to the dispute and the interest must be "direct, not contingent." Travelers Indemnity Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989). "The 'interest' test is primarily a practical guide of disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d at 700.

Applying this standard, "a state official directly concerned in effectuating the state policy has an 'interest' in a legal controversy …which concerns the nature and protection of the state policy." Id. Accordingly, when a federal action affects public interests which state law has entrusted to government officials, those officials should be found to have a protectable interest in that litigation. See Rhode Island Cogeneration Associates v. City of East Providence, 728 F. Supp. 828, 830-31 (D.R.I. 1990) (Rhode Island Attorney General granted intervention to defend challenge to city ordinance which affected state's sharing of governance power with municipalities); Gulf States Utilities Co. v. Alabama Power Co., 824 F.2d 1465, 1476 (5th Cir. 1987), modified on other grounds, 831 F.2d 557 (5th Cir. 1987) (per curiam) (public utility commission granted intervention in a contract dispute when it had authority under state law to approve contracts); Hines v.

4

D'Artois, 531 F.2d 726, 738 (5th Cir. 1976) (state civil service examiner granted intervention in Title VII dispute when relief could affect duties under hiring laws); Smith v. Pangilinan, 651 F.2d 1320, 1324 (9th Cir. 1980) (United States Attorney General permitted to intervene in a declaratory action where plaintiffs sought certificates of identity under laws of Northern Mariana Islands and outcome could affect law regarding entitlement to United States citizenship).

Massachusetts jurisprudence amply details the Attorney General's expansive role in protecting the public interest in public charities. Pursuant to Mass. Gen. L. ch. 12, §8, the Attorney General "shall enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof." Further, "it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings." Lopez v. Medford Community Center, Inc., 384 Mass. 163, 167, 424 N.E.2d 229, 232 (1981). The Attorney General has exclusive standing to enforce the rights of a charity's beneficiaries to correct abuses in the administration of a public charity. Weaver v. Wood, 425 Mass. 270, 275-76, 680 N.E.2d 918, 922 (1997). See Burbank v. Burbank, 152 Mass. 254, 256, 25 N.E. 427, 428 (1890). See generally Ronald Chester, George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 411 (3d ed. Supp. 2007). The vehicle for the Attorney General's enforcement role is found in Mass. Gen. L. ch. 12, §8G, which provides: "The Attorney General shall be made a party to all judicial proceedings in which he may be interested in the performance of his duties under the provisions of sections eight to eight M ..." See Mass.

5

R. Civ. P. 24, 1973 Reporter's Notes (citing Mass. Gen. L. ch. 12, §8 as an example of "intervention as of right").[1]

NEMC's counterclaim alleges that Lifespan misappropriated NEMC funds, in violation of Lifespan's fiduciary duty to NEMC. The Attorney General has exclusive statutory authority to represent the public interest in seeing that the fiduciary duties that Lifespan owes to NEMC under Massachusetts law continue to be recognized and are enforced, including Lifespan's obligations not to transfer NEMC's assets to itself in violation of the rule set forth in Massachusetts Charitable Mechanic Association v. Beede, 320 Mass. 601, 609-11, 70 N.E.2d 825, 830-31 (1947) (charity does not have freedom to transfer its assets to another charity without judicial approval). Notably, Lifespan recently asserted, in its March 2008 response to NEMC's admissions requests, that it had never owed a fiduciary duty to NEMC. This raises a complex issue of great importance to the Attorney General's role in regulating Massachusetts public charities, which has not yet been addressed under Massachusetts law: whether Lifespan's control over NEMC, through its sole corporate membership as contemplated by the Affiliation Agreement, created a fiduciary duty to NEMC. The Attorney General, the regulator of

---

[1]    In In Re Boston Regional Medical Center, Inc., 328 F. Supp. 2d 130, 144-47 (D. Mass. 2004), the district court extensively reviewed Massachusetts case law defining the Attorney General's role under Mass. Gen. L. ch. 12, §8G, where a bankruptcy trustee brought claims against a bankrupt hospital's former fiduciaries alleging that they had violated their fiduciary duties to the hospital. While acknowledging the Attorney General's historic role in representing the rights of charitable beneficiaries to bring such claims, the court held that the bankruptcy trustee also had standing to bring claims of fiduciary violations. Id. The court assumed that the Attorney General could have intervened ("It is undisputed that the Attorney General knows about this case. He could have intervened, but chose not to....), but the court declined to dismiss the case because the Attorney General was not a necessary party required to be joined under Fed. R. Civ. P. 19(b). Id. at 153.

The court's assumption that the Attorney General could have intervened highlights the stricter standard required for determining which parties are indispensable for Rule 19(b) joinder purposes compared to the standards for determining which parties should be allowed to intervene as of right. Fernandez v. Kellogg USA, Inc., 440 F.3d 541, 547-48 (1st Cir. 2006) (although First Circuit reversed district court and allowed intervention of right, that did not necessarily imply that the intervenor was an indispensable party for Rule 19(b) purposes, requiring dismissal of the case on remand in that party's absence).

public charities in Massachusetts, asserts that Lifespan did owe this fiduciary duty to
NEMC.

**B.  Lifespan Agreed to Attorney General Enforcement Of Its Fiduciary Duties
Owed To NEMC As A Condition For Its Affiliation Agreement With NEMC.**

In 1997, the Attorney General asserted regulatory authority over Lifespan and
acted to protect the public by negotiating certain conditions which were incorporated in
the Affiliation Agreement between Lifespan and NEMC.  In exchange for the Attorney
General's agreement not to oppose the affiliation, Lifespan, through a newly-created
subsidiary, New NEMCH, agreed to provide 30 days notice to the Attorney General, with
judicial review in Massachusetts courts applying Massachusetts law, before: (1) using
New NEMCH's pre-affiliation assets for purposes inconsistent with a Massachusetts
hospital and physician network (Affiliation Agreement § 3.2); (2) ending New England
Medical Center Hospitals as an acute care hospital, (Id.); or (3) changing the membership
or control of New NEMCH.  (Affiliation Agreement § 5.)  Because the Affiliation
Agreement required judicial review in Massachusetts state court applying Massachusetts
law, the Attorney General would have been a necessary party to any such court
proceeding under Mass. Gen. L. ch. 12, §8G.  The Affiliation Agreement was also
designed to prevent Lifespan's apparent race to file this action in Rhode Island federal
court in order to avoid Massachusetts state court jurisdiction.  Through the Affiliation
Agreement, Lifespan agreed to the Attorney General's enforcement of its fiduciary
duties.

**C. If The Attorney General Is Not Allowed To Intervene, Her Interest In Enforcing Lifespan's Fiduciary Duties Owed to NEMC Will Be Impaired, Since NEMC Cannot Adequately Enforce Those Duties.**

If the Attorney General is not allowed to intervene, she will be unable to enforce Lifespan's fiduciary duties to NEMC either in this action, or in the Massachusetts state court action, which has been stayed pending this litigation. The Attorney General would be forced to initiate yet a third lawsuit, in Massachusetts state court.

Nor can NEMC adequately enforce Lifespan's fiduciary duties in the Attorney General's absence. "The requirement of the Rule is satisfied if the applicant shows that representation of its interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972). Tests of inadequacy of representation "tend to vary depending on the strength of the interest. Courts might require very little inadequacy if the would-be intervenor's home were at stake and a great deal if the interest was thin and widely-shared." Daggett v. Commission on Government Ethics and Election Practices, 172 F.3d 104, 113-14 (1st Cir. 1999).

There is inadequate representation where an intervenor's interests are sufficiently different in kind or degree from those of the named party, and when the intervenor would be required to use different legal arguments. Fernandez v. Kellogg USA, Inc., 440 F.3d 541, 544-47 (1st Cir. 2006) (intervention allowed, reversing district court, where existing defendant was not a party to relevant contracts between the defendant-intervenor and the plaintiff). A court will also consider whether an intervenor offers an additional, necessary element to proceedings that otherwise would be neglected. Prete v. Bradbury, 438 F.3d 949, 956-59 (9th Cir. 2006) (reversing grant of intervention of right). Compare

Resolution Trust Corp. v. City of Boston, 150 F.R.D. 449, 451 (D. Mass. 1993) (though Massachusetts Attorney General had legitimate interest in a ruling that federal law did not preempt rent control ordinance, he was not permitted to intervene after he did not overcome presumption of adequate representation).

The Attorney General's interests are not adequately protected by NEMC. In order to enforce Lifespan's fiduciary duties, NEMC would be required to use additional legal arguments that the Attorney General would not be required to use. Lifespan asserts that NEMC released its fiduciary duty claims in the Restructuring Agreement. The Attorney General is informed that Lifespan is seeking this Court's permission to file a summary judgment motion on this issue. That defense would not apply to the Attorney General, who was not a party to the Restructuring Agreement, and therefore any release of NEMC's claims against Lifespan would not bind the Attorney General. Only the Attorney General can pursue the fiduciary duty claims against Lifespan without the need to show that those claims may not be barred by a release of claims in the Restructuring Agreement.[2]

If the Attorney General is not allowed to intervene and is forced to secure a state court judgment, that judgment could conflict with a potential judgment of this Court, a likely outcome if this Court either (1) finds that Lifespan did not owe NEMC a fiduciary duty; or (2) NEMC released its claims for breach of fiduciary duty against Lifespan in the Restructuring Agreement. See Security Insurance Company of Hartford v.

---

[2]    Further, Lifespan asserted in its reply to NEMC's amended counterclaim that NEMC's claims are barred by applicable statutes of limitations, but there is no statute of limitations applicable to the Attorney General's enforcement of fiduciary obligations owed to a charity. Davenport v Attorney General, 361 Mass. 372, 377-78, 280 N.E.2d 193, 197 (1972) ("Mere delay in making available or in expending trust funds for a charitable purpose will not defeat a charitable trust ....Similar consideration should lead to avoiding the forfeiture of a charitable trust because of the inertia, misconduct, or maladministration of the trustees.")

Schipporeit, 69 F.3d 1377, 1381 (7th Cir. 1995) (allowing permissive intervention of insured church in suit brought by its insurer: "the most obvious benefits of intervention are efficiency and consistency resulting from resolving related issues in a single proceeding. Economics of scale may be achieved by involving as many concerned parties as is compatible with efficiency and due process."). [3]

Since the Attorney General's perspective is not adequately shared by NEMC, the Attorney General has satisfied the "minimal" requirement of demonstrating that NEMC's representation of its interest "may be" inadequate. Trbovich v. United Mine Workers, 404 U.S. at 538 n.10.

**D. The Attorney General's Motion Is Timely.**

Factors considered in determining whether an intervention motion is timely include the length of time the applicant knew or reasonably should have known that its interest was imperiled before it moved to intervene, the foreseeable prejudice to existing parties if intervention is allowed, and the foreseeable prejudice to the applicant if intervention is denied. Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 784 (1st Cir. 1988) cert. denied, 488 U.S. 1030 (1989).

---

[3]    If the Court allows Attorney General intervention now, that would be a more efficient use of judicial resources than needlessly litigating the issue of whether NEMC has released its fiduciary claims against Lifespan, then joining the Attorney General as a substitute plaintiff to pursue those fiduciary duty claims if the Court finds that NEMC has released them. Rule 21 provides that: "... the court may, at any time, on just terms, add or drop a party..." Substitution of parties can be made in the discretion of the court and in the interests of justice. 7 Wright, Miller, and Kane, Federal Practice and Procedure: Civil 3d § 1686. See Mathis v. Bess, 761 F. Supp. 1023, 1026-27 (S.D.N.Y. 1991) (court substituted new plaintiff inmate where existing plaintiff inmate's claims were moot, since defendants would not be prejudiced where claims arose from same conduct, transaction and occurrence); Hackner v. Guaranty Trust Co. of New York, 117 F.2d 95, 98-99 (2d Cir. 1941), cert. denied 313 U.S. 559 (1941) (where existing plaintiffs did not present claims for jurisdictional amounts, new plaintiffs having claims with sufficient amounts were substituted, permitting the case to proceed without need to institute new action).

For purposes of a timeliness analysis under Fed. R. Civ. P. 24(a), prejudice to the parties stems from an intervenor's failure to intervene when he knew or should have known of his interest, and any prejudice is measured from the length of notice of interest. Stallworth v. Monsanto, 558 F.2d 257, 265-67 (5th Cir. 1977) (court found it difficult to find any prejudice to parties from intervenor's 30 day delay). The purpose of a timeliness analysis is to prevent last minute disruption of painstaking work by the parties and court. Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d at 1232. See Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 (3d Cir. 1969) (defendant town allowed to amend pleadings to conform to proof; prejudice from a Rule 15 amendment to pleadings "means undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party."); Mathis v. Bess, 761 F. Supp. 1023, 1027 (S.D.N.Y. 1991) (joining a new plaintiff late in the litigation is not prejudicial if the new plaintiff's claim arose from the same conduct, transaction, or occurrence as the original plaintiff and they share an identity of interest, so that earlier joinder would not have materially altered the litigation course).

The Attorney General did not seek to intervene prior to April 2008 because this action did not involve any significant legal issues and involved a fact-based, complex dispute about (1) the parties' relationships during the five years of the Affiliation Agreement, and (2) whether Lifespan violated fiduciary duties it owed to NEMC. See Mass. Gen. L. ch. 12, § 8G: "The Attorney General shall be made a party to all judicial proceedings in which he may be interested in the performance of his duties under the provisions of sections eight to eight M ..."; In Re Boston Regional Medical Center, Inc., 328 F. Supp. 2d 130, 153 (D. Mass. 2004) (where plaintiff alleged breach of fiduciary

duty to a charity, court could only speculate whether the Attorney General exercised his discretion not to intervene because the plaintiff's case lacked merit, there was no effective remedy, or because of limited Attorney General resources).

The Attorney General first learned in April 2008 of the need to intervene to protect a significant interest in this action. See Donaldson v. United States, 400 U.S. 517, 531 (1970) (a proposed intervenor must demonstrate a "significantly protectable" interest). This is when NEMC informed the Attorney General that in March 2008 Lifespan had asserted, in response to an admissions request from NEMC, that Lifespan had not owed any fiduciary duty to NEMC, and that its sole obligations to NEMC were contractual. NEMC also informed the Attorney General that Lifespan's position in the requests for admission directly contradicts prior deposition testimony made under oath by a key Lifespan official that Lifespan had owed NEMC a fiduciary duty. As stated, Lifespan's new assertion, that it never owed a fiduciary duty to NEMC, raises a significant legal issue of great importance to the Attorney General's role in regulating Massachusetts public charities, an issue which has not yet been addressed under Massachusetts law. The Attorney General thus now seeks intervention to address that issue.

There is no prejudice to existing parties from the Attorney General's motion seeking mandatory intervention after learning that the Attorney General's interests in establishing and enforcing Lifespan's fiduciary duties were imperiled. There will be no disruption or change of tactics for the parties now resulting from the Attorney General's filing an answer with a counterclaim adopting a portion of NEMC's counterclaim against Lifespan. If the Attorney General had intervened in April, Lifespan would then have

been required to respond to the Attorney General's counterclaim, and Lifespan's answer presumably would have mirrored its prior answer to NEMC's counterclaim. There is no additional burden placed on Lifespan from responding to the Attorney General's counterclaim three months later. Discovery is closed, and no more discovery would be required to address the Attorney General's counterclaim, which is identical with NEMC's counterclaim alleging that Lifespan violated fiduciary duties it owed to NEMC. Accordingly, Lifespan will not be prejudiced by the Attorney General's intervention.

Conversely, the Attorney General will be prejudiced if she is not allowed to intervene. As detailed in Section II C, there is a risk that NEMC may not be able to enforce Lifespan's fiduciary duties in light of Lifespan's proposed summary judgment motion asserting that NEMC's claim is barred because NEMC released all non-contractual claims against Lifespan in the Restructuring Agreement.

Since the Attorney General has satisfied all of the requirements for mandatory intervention under F. R. Civ. P. 24(a)(2), her motion to intervene should be granted.


III. **THE ATTORNEY GENERAL SHOULD ALTERNATIVELY BE PERMITTED TO INTERVENE UNDER RULE 24(b) TO ENFORCE LIFESPAN'S FIDUCIARY DUTIES OWED TO NEMC, SINCE THERE WILL BE NO PREJUDICE FROM ENFORCING NEMC'S EXISTING CLAIM.**

Rule 24(b) provides, in relevant part:

**(2) By a Government Officer or Agency**.

On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

> (A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

**(3) Delay or Prejudice.**

In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The Supreme Court has sanctioned government intervention based upon the government's "interest in the maintenance of its statutory authority and the performance of its public duties." SEC v. United States Realty & Improvement Co., 310 U.S. 434, 460 (1940) (Court approved intervention by the SEC to ensure that a proposed reorganization was carried out under a statute providing for SEC scrutiny). In 1948, Rule 24(b) was amended to codify this decision and to permit expanded government intervention. Nuesse v. Camp, 385 F.2d 694, 704-05 (D.C. Cir. 1967) ("It is perhaps more accurate to say that it considers the governmental application with a fresh and more hospitable approach."). In short, "the whole thrust of the amendment is in the direction of allowing intervention liberally to government agencies and officers seeking to speak for the public interest." 7C Wright, Miller, and Kane, Federal Practice and Procedure: Civil 3d § 1912. See also Blowers v. Lawyers Co-operative Publishing Co., 527 F.2d 333, 334 (2d Cir. 1975) (per curiam) ("District Courts should not be niggardly in allowing a government agency to intervene in cases involving a statute it is required to enforce; indeed, a hospitable attitude is appropriate.") (dicta).

The provisions of Rule 24(b)(2)(A) are triggered because NEMC's claim is based on a statute administered by the Attorney General. NEMC claims that Lifespan owed it a fiduciary duty, and the Attorney General's office is the agency which enforces that duty. As set forth above, pursuant to Mass. Gen. L. ch. 12, §8, the Attorney General

14

"shall enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof." Further, "it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings." Lopez v. Medford Community Center, Inc., 384 Mass. 163, 167, 424 N.E.2d 229, 232 (1981).

Permissive government intervention must also be weighed against potential prejudice to original parties under Rule 24(b)(3). District courts in the First Circuit that have reviewed requests for permissive intervention have weighed in the balance the following:

> the nature and extent of the intervenor's interest, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, whether the applicant will benefit by the intervention, whether the intervenor's interests are adequately represented by the other parties, and whether the intervenors will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

Langone v. Flint Ink North America Corporation, 231 F.R.D. 114, 121 (D. Mass. 2005), citing In re Acushnet River & New Bedford Harbor Proceedings, 712 F. Supp. 1019, 1023 (D. Mass. 1989) (citations omitted.)

The principal consideration which a court must consider in exercising its discretion under Rule 24(b) "is whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1913. See Resolution Trust Corp. v. City of Boston, 150 F.R.D. 449 (D. Mass. 1993) (permissive intervention denied where Massachusetts Attorney General's legitimate interest in a ruling that federal law did not preempt rent control ordinance could not justify delay and added demands on court resources).

15

Since the court has discretion to refuse permissive intervention altogether, it also may specify conditions on which it will allow the applicant to become a party, so as to minimize delay and prejudice to the existing parties. 7C Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1913; Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 378 (1987) (district court's grant of permissive intervention with restrictions on intervenor's claims and rights to discovery did not constitute constructive denial of motion to intervene); Carroll v. American Federation of Musicians of United States and Canada, 33 F.R.D. 353 (S.D.N.Y. 1963) (permissive intervention allowed subject to conditions limiting discovery and limiting the issues the intervenors might assert).

The Attorney General's motion to intervene voluntarily seeks to limit the Attorney General's intervention to addressing an existing issue in this case: whether Lifespan violated fiduciary duties it owed to NEMC. Accordingly, there will be no delay, prejudice, disruption or change of tactics for the parties resulting from the Attorney General's adopting a portion of NEMC's answer and counterclaim against Lifespan. Lifespan's answer to the Attorney General's counterclaim, which mirrors NEMC's counterclaim as to Lifespan violating fiduciary duties it owed to NEMC, presumably will mirror Lifespan's prior answer to NEMC's counterclaim. No additional discovery would be required to address the Attorney General's counterclaim. Accordingly, Lifespan will not be prejudiced by the Attorney General's intervention.

As detailed above in Section II C, the Attorney General will benefit by intervention, since she is the only party who can adequately pursue the claim that

16

Lifespan violated fiduciary duties which it owed NEMC, especially if the Court finds that

NEMC released those claims in the Restructuring Agreement with Lifespan.

## IV.  THIS COURT WILL HAVE SUPPLEMENTAL JURISDICTION OVER THE ATTORNEY GENERAL'S CLAIM, WHETHER SHE INTERVENES OF RIGHT OR PERMISSIVELY.

For potential intervenors in a diversity jurisdiction case, federal court jurisdiction

of intervention claims is governed by the Supplemental Jurisdiction Statute, 28 U.S.C.

§1367 (1990) which provides, in part:

> **(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

> **(b)** In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

Under section (a) of the statute, supplemental jurisdiction is proper where the

relationship between the federal and state claims "form part of the same case or

controversy under Article III of the" Constitution.  Under United Mine Workers v. Gibbs,

383 U.S. 715, 725 (1966), from which §1367 was derived, that means a common nucleus

of operative facts such that a plaintiff would ordinarily be expected to try them all in a

single judicial proceeding.  Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000).  "A

loose factual connection between the claims is generally sufficient."  Baer v. First

Options of Chicago, Inc., 72 F.3d 1294, 1299 (7th Cir. 1995).

17

Defendant intervenors as of right satisfy both the case or controversy requirement of section (a) and the prohibition of section (b) against intervention by plaintiffs, even where those intervenors assert counterclaims. In re Olympic Mills Corporation, 477 F.3d 1 (1st Cir. 2007) (addition of nondiverse defendant intervenors as of right did not divest court of diversity jurisdiction where intervenors were not indispensable parties), citing Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156 (3d Cir. 1995) (sole member of a charity could intervene as of right as a defendant and then assert a counterclaim against a non-diverse plaintiff to protect the charity's rights). See also Langone v. Flint Ink North America Corporation, 231 F.R.D. 114 (D. Mass. 2005). Thus, there is supplemental jurisdiction for the Attorney General to intervene as of right to file an answer and a compulsory counterclaim alleging that Lifespan violated fiduciary duties it owed to NEMC.

The Attorney General also seeks alternatively to intervene as a defendant permissively. Permissive defendant intervenors are entitled to the exercise of supplemental jurisdiction for their claims only if they intervene to defend or protect interests put at issue by the original action, interests likely to be lost without the party's intervention. M.C.I. Telecommunications v. Logan Group, 848 F. Supp. 86, 88-89 (N.D. Tex. 1994) (intervenor had no interest placed at risk by complaint, and therefore could not permissively intervene as defendant). See Scottsdale Insurance Co. v. Subscriptions Plus, Inc., 2000 W.L. 34236739 (W.D. Wis. 2000) (declining to exercise jurisdiction over party seeking to intervene permissively as defendant only to assert affirmative relief against co-defendants, even though it lacked diversity with plaintiffs).

18

The Attorney General simply seeks permissive intervention to protect interests put at issue by Lifespan's claim, in the form of a compulsory counterclaim.  Compulsory counterclaims filed by permissive intervenors involve the same case or controversy for purposes of supplemental jurisdiction.  Jones v. Ford Motor Credit Co., 358 F.3d 205, 213 (2d Cir. 2004) (defendant's compulsory counterclaims against plaintiff necessarily arose out of the "same transaction or occurrence" as plaintiff's claim, and were therefore part of the same case or controversy for purposes of supplemental jurisdiction); Langone v. Flint Ink North America Corporation, 231 F.R.D. 114 (D. Mass. 2005) (supplemental jurisdiction arguably exists for permissive defendant-intervenor's claims such as compulsory counterclaims); Conseco v. Wells Fargo Financial Leasing, Inc., 204 F. Supp. 2d 1186, 1193 (S.D. Iowa 2002) (supplemental jurisdiction exists for compulsory counterclaims of party seeking to intervene permissively).

Even if the Attorney General's counterclaim was considered permissive, it would still be part of the same case or controversy as Lifespan's claim and therefore the counterclaim would be subject to supplemental jurisdiction.  The Attorney General's counterclaim bears a factual relationship to Lifespan's complaint, since both stem from the parties' conduct and obligations flowing from the Affiliation Agreement.  Permissive counterclaims bearing a factual relationship to the complaint also involve the same case or controversy for purposes of supplemental jurisdiction.  Jones v. Ford Motor Credit Co., 358 F.3d at 213 (there is supplemental jurisdiction where the permissive counterclaim bears some factual relationship to the complaint, since the constitutional requirement of a "case or controversy" is satisfied if the counterclaim is part of the same common nucleus of operative facts as the complaint, even though it does not arise out of

19

the same transaction).[4]  See 16 James W. Moore, Moore's Federal Practice (3d ed. Supp.

2008) § 106.46.  (Though the requirements of §1367(a) to be part of the same case or

controversy as the original suit will not automatically be satisfied in case of permissive

intervention, neither will they automatically fail to be satisfied.)

## V.    CONCLUSION.

For the reasons set forth herein, the Massachusetts Attorney General
respectfully requests that this Court grant her motion to intervene in the above-captioned
proceedings.

RESPECTFULLY SUBMITTED,

MARTHA COAKLEY
ATTORNEY GENERAL


BY:  /s/ Christopher E. Hultquist

Christopher E. Hultquist (#5264)
Special Assistant Attorney General
DarrowEverett LLP
1 Turks Head Place – Suite 500
Providence, RI 02903
Tel:  (401) 453-1200
Fax:  (401) 453-1201
Email:  chultquist@darroweverett.com
Eric Carriker, Assistant Attorney General
       (pro hac vice admission pending)
Jonathan Green, Assistant Attorney General
       (pro hac vice admission pending)
Non-Profit Organizations/
Public Charities Division
One Ashburton Place, Room 1813
Boston, MA 02108
(617) 727-2200
Dated: July 18, 2008                 (617) 727-2920 (FAX)

---

[4]    The 1990 supplemental jurisdiction statute radically departed from prior case law, which denied
jurisdiction to permissive defendant intervenors who lacked independent diversity jurisdiction. E.g.
International Paper Co. v. Inhabitants of the Town of Jay, Me., 887 F.2d 338 (1st Cir. 1989) (Maine
Attorney General could not intervene permissively as defendant to defend a state statute, since there was no
independent diversity jurisdiction), citing Moor v. Alameda County, 411 U.S. 693 (1973) (state is not a
citizen for purposes of diversity jurisdiction).

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2008, I filed the Memorandum in Support of Attorney General's Motion to Intervene as of Right, or Alternatively for Permissive Intervention, electronically, and it is available for viewing and downloading from the (ECF) system.  I sent a true copy of the within document by electronic means (ECF) to the following counsel of record:

David A. Wollin, Esq.
dwollin@apslaw.com

Jeffrey T. Rotella, Esq.
jrotella@apslaw.com

Deming E. Sherman, Esq.
dsherman@eapdlaw.com


                                                    /s/  Christopher E. Hultquist

Dated:  July 18, 2008


21