UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND MEDICAL<br>CENTER, INC., AND NEW ENGLAND<br>MEDICAL CENTER HOSPITALS, INC.,<br><br>Defendants,<br><br>MARTHA COAKLEY, as she is<br>ATTORNEY GENERAL of the<br>COMMONWEALTH OF MASSACHUSETTS,<br><br>Defendant-Intervenor. | C. A. No. 06-421-T-DLM |

### ANSWER AND COUNTERCLAIM OF DEFENDANT-INTERVENOR MASSACHUSETTS ATTORNEY GENERAL

Defendant-Intervenor Martha Coakley, as she is Attorney General of the Commonwealth of Massachusetts (the "Attorney General") hereby answers the Complaint of Lifespan Corporation ("Lifespan") as follows:

PARTIES

1. Admitted.

2. Admitted.

3. Admitted.

1

## JURISDICTION AND VENUE

4. The Jurisdiction and Venue allegations contained in the unnumbered Paragraph of the Complaint and in Paragraph 4 of the Complaint state conclusions of law; therefore no response is required. Further answering, the Attorney General admits that the New England Medical Center entities (including New England Medical Center, Inc. ("NEMCI") and New England Medical Center Hospitals, Inc. ("NEMCH") (collectively "NEMC")) and Lifespan are citizens of different states and that the amounts claimed in this lawsuit exceed $75,000.

## FACTS

5. The Attorney General admits that as of September 30, 2002, Lifespan, NEMCI, NEMCH and Lifespan Corporation of Massachusetts, Inc. ("LOM") entered into a Restructuring Agreement, a copy of which is attached to the Complaint as Exhibit A. The Restructuring Agreement is a document that speaks for itself.

6. The Attorney General denies that Paragraph 6 provides an accurate and complete summary of the relevant terms of the Restructuring Agreement. The Restructuring Agreement is a document that speaks for itself.

7. The Attorney General denies that Paragraph 7 provides an accurate and complete summary of the relevant terms of the Restructuring Agreement. The Restructuring Agreement is a document that speaks for itself.

8. Denied.

9. Denied.

10. Denied.

## COUNT I

11.  The Attorney General incorporates by reference her responses to Paragraphs 1 through 10 as if fully set forth herein.

12.  Denied.

13.  Denied.

## COUNT II

14.  The Attorney General incorporates by reference her responses to Paragraphs 1 through 13 as if fully set forth herein.

15.  Denied.

16.  Denied.

## AFFIRMATIVE DEFENSE

Further answering, the Attorney General asserts the following affirmative defense: Lifespan's claims are barred, in whole or in part, as a result of the breaches of fiduciary duty committed by Lifespan and LOM in its dealings with NEMC.

## **COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 13(a), Plaintiff-Intervenor-in-Counterclaim, Martha Coakley, as she is Attorney General of the Commonwealth of Massachusetts (the "Attorney General") hereby asserts the counterclaims below against Defendant-in-Counterclaim Lifespan Corporation ("Lifespan").

## INTRODUCTION

1.  The Attorney General asserts these counterclaims against Lifespan for breach of fiduciary duty and unjust enrichment.

3

2.  During the course of dealings between the parties, Lifespan and its agent and affiliate, Lifespan Corporation of Massachusetts, Inc. ("LOM") made intentional and/or negligent misrepresentations and engaged in willful misconduct and/or gross negligence that caused NEMC substantial losses and involved the waste and misappropriation of NEMC's assets by Lifespan.

3.  Lifespan's conduct also breached the fiduciary duties that it owed to NEMC and resulted in Lifespan being unjustly enriched at the expense of NEMC. Accordingly, the Attorney General seeks compensatory damages for NEMC and disgorgement of the profits Lifespan earned from its wrongful conduct toward NEMC.

## PARTIES

4.  Plaintiff New England Medical Center, Inc. ("NEMCI") is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts.

5.  Plaintiff New England Medical Center Hospitals, Inc. ("NEMCH") is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts.

6.  Defendant Lifespan Corporation ("Lifespan") is a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

7.  Plaintiff-Intervenor Attorney General is Martha Coakley, who is the Attorney General of the Commonwealth of Massachusetts, and who brings this counterclaim in the public interest pursuant to Mass. Gen. L, ch. 12, §8 et seq. The Attorney General's principal office is located in Boston, Massachusetts.

## JURISDICTION AND VENUE

8.  This Court has personal jurisdiction over Lifespan because it is a Rhode Island corporation. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and this

Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

9. As of September 30, 2002, NEMC and Lifespan entered into a Restructuring Agreement terminating the affiliation between the parties. A copy of that agreement is attached to Lifespan's Complaint (Docket No. 1) as Exhibit A.

10. NEMC has incurred substantial losses resulting directly and solely from Lifespan's willful misconduct and/or gross negligence in the provision of services to NEMC by Lifespan employees working under the direction and supervision of Lifespan employees during the affiliation period from October 31, 1997 through October 31, 2002 (the "Affiliation Period"), including but not limited to the conduct described below. Such conduct also breached the fiduciary duties that Lifespan owed to NEMC. This conduct includes, but is not limited to, the following:

    a. <u>Failure to Manage Commercial Contracts</u>: During the Affiliation Period, Lifespan had sole responsibility for negotiating and maintaining NEMC's commercial payor contracts, and charged NEMC substantial fees for its performance of this function. In fact, Lifespan grossly mismanaged, and in many cases willfully ignored altogether, this contract management function. For example, in numerous instances Lifespan failed to renegotiate contracts for years following their effective termination dates. There were also numerous instances where Lifespan renegotiated payor contracts at rates well below market levels, to the substantial detriment of NEMC. As a result of Lifespan's conduct, NEMC suffered millions of dollars in losses in the form of years of substandard reimbursement from its commercial payors.

5

b.  <u>Failure to Manage Accounts Receivable</u>: During the Affiliation Period, Lifespan grossly mismanaged and/or ignored entirely its responsibilities to oversee the pursuit of the collection of NEMC's accounts receivable. As a result of Lifespan's conduct, NEMC incurred bad debt expenses on these accounts receivable substantially in excess (by millions of dollars) of what it otherwise would have.

c.  <u>Deliberately Excessive Corporate Management Fees and Capital Charges</u>: During the Affiliation, Lifespan charged, and NEMC paid, $166 million in corporate management fees, amounts that Lifespan knew were grossly disproportionate to the services Lifespan was actually performing. Similarly, Lifespan charged, and NEMC paid, more than $15.8 million in capital charges, when Lifespan knew that these capital charges it was assessing bore no relation to the actual capital employed at, or for the benefit of, NEMC. NEMC did not discover these discrepancies until after the Affiliation Period had ended.

d.  <u>Waste of NEMC's Assets</u>: During the Affiliation Period, Lifespan systematically misappropriated NEMC assets for its own benefit, as manifested by the more than $90 million decrease in NEMC's cash and investment assets that occurred during that period.

e.  <u>Depletion of NEMC Reserves</u>: During the Affiliation Period, Lifespan deliberately employed accounting practices to improperly bolster its own balance sheet while depleting NEMC's reserves, thereby leaving NEMC substantially under-reserved to its detriment.

f.  <u>Failure to Disclose Material Information to NEMC</u>: In connection with the Interest Rate Swap Transaction described in Paragraph 12 below, Lifespan deliberately

6

withheld material information about the transaction from NEMC, in violation of the fiduciary duties that Lifespan owed to NEMC.

11.     NEMC has also incurred substantial losses resulting directly and solely from material obligations that it incurred as a result of actions that were approved by the Board of Directors of LOM, acting as sole member of NEMCI or NEMCH, and that were taken without the knowledge, consent, ratification or approval of the chief executive officer, chief financial officer or any trustee of NEMCI or NEMCH or any of the NEMC Affiliates. This conduct by Lifespan and LOM also violated their fiduciary duties to NEMC.

12.     For example, Lifespan, through LOM, compelled NEMC to enter into an Interest Rate Swap Transaction with Morgan Stanley that resulted in substantial losses, of millions of dollars, to NEMC. Far from knowingly approving or consenting to this transaction, NEMC vigorously opposed it and requested that Lifespan obtain an independent expert opinion concerning the reasonableness and risk of the swap before proceeding. Lifespan rejected this request, and through LOM, compelled NEMC to proceed with the transaction notwithstanding its objections.

13.     In addition to the losses incurred by NEMC as a result of the obligations imposed on it in the Interest Rate Swap Transaction, the transaction placed NEMC in violation of its bond indenture covenants, forcing NEMC to incur substantial time and expense renegotiating those debt covenants, and compelling NEMC to agree to more restrictive covenants, to its detriment.

14.     Prior to the closing of the Interest Rate Swap Transaction, Lifespan purposefully hid from NEMC the fact of its deep involvement in the place of the derivative, thereby depriving NEMC and its officers from the knowledge of this conflict of interest. Moreover, Lifespan

purposefully failed to disclose to NEMC that Lifespan had determined that the very same transaction was regarded as too risky for Lifespan to engage in itself.

15.   NEMC has incurred substantial losses as a result of, arising out of or directly or indirectly relating to intentional and/or negligent misrepresentations (affirmatively or by concealment) by Lifespan concerning the provision of services to NEMC. Such intentional and/or negligent misrepresentations were false when made and Lifespan knew or should have known through reasonable care or competence of such falsity. The misrepresentations include, but are not limited to, the following:

a.   At the outset of and throughout most of the affiliation, Lifespan misrepresented that, during the Affiliation Period, Lifespan would have full control of negotiating and maintaining NEMC's commercial payor contracts and that they had the experience and ability to competently negotiate and manage such contracts. During this same period, Lifespan failed to disclose they did not have the ability to competently negotiate and manage NEMC's contracts. In fact, Lifespan grossly mismanaged, and in many cases willfully ignored altogether, this contract management function as outlined above. As examples of such gross mismanagement, Lifespan failed to renegotiate contracts for years following their effective termination dates or renegotiated payor contracts at rates well below market levels, and uniformly failed to negotiate payor contracts on behalf of the physicians who made up the staff at New England Medical Center to the substantial detriment of NEMC. As a result of Lifespan's intentional and/or negligent misrepresentations, NEMC suffered millions of dollars in losses in the form of years of substandard reimbursement from its commercial payors.

b.  At the outset of and during the affiliation, Lifespan misrepresented that NEMC's affiliation with Lifespan would result in cost savings to NEMC and programmatic initiatives in NEMC's favor.  Upon information and belief, at the time these misrepresentations were made, there was no intention on the part of Lifespan to effect these cost savings or programmatic initiatives, such as making NEMC the regional cancer center for the Lifespan system.  As a result of these misrepresentations, NEMC paid excessive corporate management fees and capital charges and saw its cash and investment assets depleted by more than $90 million.

c.  Prior to NEMC entering into the Interest Rate Swap Transaction, Lifespan misrepresented, by failing to disclose, that the senior Lifespan executive promoting the Interest Rate Swap Transaction to NEMC had an impermissible and unethical conflict of interest with the principal proponent of the Transaction at Morgan Stanley that disqualified the executive from being involved in promoting the Transaction.  Moreover, prior to NEMC entering into the Interest Rate Swap Transaction, Lifespan failed to disclose to NEMC that Lifespan had determined that the very same transaction was regarded as too risky for Lifespan to engage in itself.  Had such unethical conflict or Lifespan's rejection of the transaction been disclosed, NEMC would not have entered into the Interest Rate Swap Transaction.  Rather, Lifespan compelled NEMC to enter into an Interest Rate Swap Transaction with Morgan Stanley that resulted in losses of millions of dollars to NEMC.

## COUNT I: BREACH OF FIDUCIARY DUTY

16.  The allegations contained in Paragraphs 1 though 15 are incorporated herein by reference and are realleged in their entirety.

17. Lifespan owed NEMC fiduciary duties of care and loyalty during the Affiliation Period.

18. Lifespan breached those fiduciary duties by its conduct, including but not limited to the conduct described above.

19. NEMC has suffered damages, and continues to suffer damages, that were proximately caused by these breaches of fiduciary duty by Lifespan and LOM.

## COUNT II: UNJUST ENRICHMENT

20. The allegations contained in Paragraphs 1 though 19 are incorporated herein by reference and are realleged in their entirety.

21. By its conduct during the Affiliation Period, including but not limited to the conduct described above, Lifespan misappropriated, and wrongfully diverted for its own benefit, the corporate assets of NEMC.

22. As a result, Lifespan was unjustly enriched at the expense of NEMC.

23. The Attorney General therefore seeks restitution to NEMC and disgorgement of the profits earned by Lifespan as a result of this wrongful conduct by Lifespan and LOM.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Attorney General respectfully requests that this Court:

(a) Enter judgment in favor of the Attorney General and against Lifespan on all claims and counterclaims;

(b) Award NEMC the damages it suffered as a result of the breaches of fiduciary duty committed by Lifespan;

(c) Order Lifespan to disgorge the profits it earned from its wrongful misappropriation and/or diversion of NEMC's assets; and

    (d)    Grant such other relief as this Court deems fair and just.

                RESPECTFULLY SUBMITTED,

                MARTHA COAKLEY
                ATTORNEY GENERAL

        BY:  /s/ Christopher E. Hultquist

                Christopher E. Hultquist (#5264)
                Special Assistant Attorney General
                DarrowEverett LLP
                1 Turks Head Place – Suite 500
                Providence, RI 02903
                Tel:  (401) 453-1200
                Fax: (401) 453-1201
                Email:  chultquist@darroweverett.com

                Eric Carriker, Assistant Attorney General
                      (pro hac vice admission pending)
                Jonathan Green, Assistant Attorney General
                      (pro hac vice admission pending)
                Non-Profit Organizations/
                Public Charities Division
                One Ashburton Place, Room 1813
                Boston, MA 02108
                (617) 727-2200
Dated: July 18, 2008         (617) 727-2920 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2008, I filed the Answer and Counterclaim of Defendant-Intervenor Massachusetts Attorney General, electronically, and it is available for viewing and downloading from the (ECF) system. I sent a true copy of the within document by electronic means (ECF) to the following counsel of record:

David A. Wollin, Esq.
dwollin@apslaw.com

Jeffrey T. Rotella, Esq.
jrotella@apslaw.com

Deming E. Sherman, Esq.
dsherman@eapdlaw.com

/s/ Christopher E. Hultquist