UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIFESPAN CORPORATION,<br><br>Plaintiff,<br><br>VS.<br><br>NEW ENGLAND MEDICAL CENTER, INC., and NEW ENGLAND MEDICAL CENTER HOSPITALS, INC.<br><br>Defendants. | ) | C. A. No. 06-421T |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL DOCUMENTS ON PLAINTIFF'S "PRIVILEGE LOG"**

Defendants New England Medical Center, Inc. and New England Medical Center Hospitals, Inc. (collectively "NEMC") respectfully submit this reply brief in support of their motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel the documents listed on Plaintiff Lifespan Corporation's ("Lifespan") self-described privilege log (the latest version attached as Exhibit B to Lifespan's opposition memorandum).

**ARGUMENT**

This Court should reject Lifespan's attempt, three weeks after the Closure Date, to justify its extremely tardy "privilege log" and its belated assertion of privilege. First, Lifespan has offered no justification – let alone any explanation amounting to good cause or excusable neglect – for failing to produce a privilege log until weeks after discovery closed on June 20, 2008. Simply stating in a pleading, without any elaboration whatsoever, that the log was not delivered due to "inadvertence" does not excuse its utter lack of timeliness. *See Banks v. Office of Senate Sergeant-At-Arms*, 241 F.R.D. 376, 386 (D.D.C. 2007) (ruling that party waived privilege when it failed to show good cause for submitting privilege log after close of discovery and rejecting

claim of "inadvertent error"). This is not a situation, for instance, in which Lifespan filed an adequate privilege log a few weeks beyond the thirty days for responding to document requests. Fed. R. Civ. P. 26(b)(5), 34(a)(2). To the contrary, Lifespan did not file its purported "privilege log" with any reference to privileges until July 11, 2008, *nine months after discovery was due and three weeks after discovery closed and all depositions had been completed. See Burlington Northern & Santa Fe Railway Co. v. U.S. District Court for District of Montana*, 408 F.3d 1142, 1149-50 (9th Cir. 2005) (affirming district court's ruling that party waived privilege as to documents on privilege log which was not filed until five months after Rule 34 time limit).

Second, it is equally egregious that the so-called "privilege log" that was prepared contained clearly *non*-privileged documents, as Lifespan has conceded by producing ten documents since NEMC filed its motion to compel. A first batch arrived a few days after NEMC filed its motion to compel; the second batch arrived the day Lifespan's opposition was due. None of those documents was available to NEMC for use during the discovery phase of this case including depositions of key Lifespan officers.

Third, Lifespan's latest, tardy privilege log (Exhibit B to Lifespan's opposition) continues to be inadequate. The log fails to explain sufficiently the basis for assertion of privilege and is no different from the one found lacking in the *Corvello* case. *Corvello v. New England Gas Co.*, 243 F.R.D. 28, 33-37 (D.R.I. 2007). Like the *Corvello* log, Lifespan's log is replete with minimalist descriptions like "Email regarding IS matters," "Email regarding Restructuring Agreement," "Memo regarding NEMC write-down," "Email regarding Status Report," "Email regarding NEMC's Budget," "Memorandum of Consent – Attorney General," and the like, "unaccompanied by any explanation as to why they are privileged." *Id*. at 36. Indeed, even in the *Corvello* case, the Court had the benefit of an affidavit in further support of

the assertion of privilege in the log. In this case, Lifespan offers no such supporting information.

Fourth, the fact that there are still a number of documents on the log that continue to be non-privileged indicates the log is inadequate and all documents in the log should be produced. For instance, Lifespan continues to assert privilege over L025461 even though Kimberly Troland, Esq., the author, is NEMC's inside counsel. Moreover, documents between Lifespan corporate officers and/or Board members, without attorney involvement, are not covered by the attorney-client privilege, as in the case of L025474-79. *See Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 505, 512-13 (W.D. Tenn. 1999) (rejecting attorney-client privilege when there was no indication of involvement of an attorney). Nor would this document be covered by the work product doctrine as being prepared in anticipation of litigation or trial. The work product doctrine applies to "materials prepared or gathered by an attorney in anticipation of litigation or preparation for trial." *United States v. Textron Inc.*, 507 F. Supp.2d 138, 148 (D.R.I. 2007). Indeed, there is nothing in the log to suggest this document was prepared or obtained "because of" the prospect of pending or threatened litigation. *Id.* at 149. The fact that the document is apparently stamped "confidential" and "subject to attorney client and attorney work product privileges,"[1] particularly without the involvement of an attorney, is not dispositive. *See Royal Surplus Lines Ins. Co.*, 190 F.R.D. at 517.

Likewise, as noted in NEMC's original memo (and not disputed by Lifespan), the attorney-client privilege "does not shield documents merely because they were transferred to or routed through an attorney." *Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 600 (S.D.N.Y. 1991). Such is the case with L025279, which is a communication between non-attorneys with a courtesy copy being sent to numerous people including counsel. Indeed, merely

---

[1] This information does not appear on Lifespan's privilege log, but rather is supplied for the first time in its opposition memorandum.

because an attorney is a recipient of a document among many other non-attorneys does not necessarily mean the document is shielded by the attorney-client privilege, as in the case of L025358, L025360, L025361, L025376, L025377, L025378-80, L025448-56, L025462, L025544-57. *Id*. Lifespan acknowledges as much when it produced L025225-57, a copy of which went to Lifespan's in-house counsel, Kenneth Arnold.

Nor does the attorney-client privilege shield underlying facts, as appears to be the case regarding L025465-70, unknown, undated attorney notes about "Open Issues: Liability Matters between Lifespan and NEMC," and likely others on the log. *See Painewebber Group v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 994 (8th Cir. 1999) (ruling that the attorney-client privilege does not shield underlying facts). The privilege only protects those communications that are confidential and are made for the purpose of seeking or receiving legal advice. *In re Keeper of Records (XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003).

Additionally, Lifespan should not be claiming the attorney-client privilege as to L025348-57, a September 15, 1998 memorandum from Lifespan Board member, V. Duncan Johnson, to in-house counsel, Kenneth Arnold, regarding "NEMC write-down." Since NEMC paid corporate overhead charges for in-house counsel operations, and in 1998 Lifespan and NEMC shared a common interest regarding the NEMC write-down of assets, no privilege should attach to the memorandum. NEMC is just as entitled to the benefit of the Board member's communication as Mr. Arnold, even assuming (contrary to what appears) that it was written for the purpose of seeking or receiving legal advice. "It is axiomatic that a legal department acting as counsel for a multi-faceted enterprise cannot withhold information, based on the attorney-client privilege, from one of the members of that enterprise." *In re Southern Air Transport, Inc.*, 255 B.R. 706, 712 (S.D. Ohio Bankr. 2000).

Permitting Lifespan to do what it has done here -- *i.e.*, produce a privilege log only after discovery closes and, then only when pressed, produce documents that clearly are not privileged and continue to hold others -- would severely disadvantage NEMC and create a terrible precedent of rewarding procedural transgressions. The Court should not sanction such conduct to the detriment of NEMC and those parties in its position in future litigation. NEMC should not be the party that suffers prejudice from Lifespan's unexplained "inadvertence." Lifespan has taken unfair advantage of NEMC by failing to deliver discoverable documents on a timely basis, thus depriving NEMC of the opportunity to review the documents in preparation for depositions and potentially other forms of discovery in the period allocated by the Court.

In short, Lifespan has failed to meet its burden of producing a *timely* and *adequate* privilege log in this case, and as a result the documents contained on its so-called log attached as Exhibit B to its opposition memorandum should be produced to NEMC.

**CONCLUSION**

For the foregoing reasons, NEMC requests that the Court compel Lifespan to produce all the documents on its so-called privilege log.

Respectfully submitted,

NEW ENGLAND MEDICAL CENTER, INC., and
NEW ENGLAND MEDICAL CENTER
HOSPITALS, INC.,

By their attorney,

*/s/ David A. Wollin*
David A. Wollin (#4950)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Phone: 401.274.7200
Fax: 401.351.4607
Dated: July 29, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of July, 2008, I did send a true copy of the within document by electronic means (ECF) to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

*/s/David A. Wollin*

*462831_1.doc*