```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF RHODE ISLAND
```

Lifespan Corporation

    v.                                      Civil No. 06-cv-421-JNL

New England Medical Center, Inc.,
now known as Tufts Medical Center
Parent, Inc., and New England
Medical Center Hospitals, Inc., now
known as Tufts Medical Center, Inc.

    and

Martha Coakley, Attorney General for
for the Commonwealth of Massachusetts,
Intervenor

## MEMORANDUM ORDER

The Massachusetts Attorney General has moved for clarification or reconsideration of one of many issues addressed in this court's recent summary judgment ruling. See Lifespan v. New Eng. Med. Ctr., Inc., --- F. Supp. 2d ---, 2010 DNH 117. The issue is whether the Attorney General's claim that Lifespan Corporation, a healthcare system in Rhode Island, breached its fiduciary duty to New England Medical Center ("NEMC"), a hospital in Massachusetts, is subject to Massachusetts's three-year statute of limitations for tort actions. See Mass. Gen. L. ch. 260, §§ 2A, 18. This court essentially jumped over that issue in its summary judgment ruling, denying Lifespan's request for summary judgment on its limitations defense because of a factual

1

dispute over when the Attorney General's claim accrued.  See Lifespan, 2010 DNH 117, at 16-17.

The Attorney General argues that, no matter when it accrued, her claim is exempt from the statute of limitations under longstanding Massachusetts case law because it alleges a breach of fiduciary duty to a public charity.  After reviewing the applicable statute and precedent again, this court agrees with the Attorney General and therefore grants her motion for reconsideration.  As a result, Lifespan's request for summary judgment on its limitations defense is denied not because of a factual dispute over when the Attorney General's claim accrued, but because no such defense is available against that claim.

## I.  Statute of limitations

Massachusetts has a three-year statute of limitations for tort actions.  See Mass. Gen. L. ch. 260, § 2A ("Except as otherwise provided, actions of tort ... shall be commenced only within three years next after the cause of action accrues.").  The statute expressly provides that it "shall apply to actions brought by or for the Commonwealth."  Mass. Gen. L. ch. 260, § 18; see also City of Boston v. Nielsen, 26 N.E.2d 366, 367 (Mass. 1940) ("the provisions of the statute of limitations ... apply to the Commonwealth equally with ordinary litigants").  The Attorney General, of course, "is the chief law officer of the

Commonwealth," Massachusetts v. Twitchell, 617 N.E.2d 609, 619 (Mass. 1993), and therefore must bring her tort actions within that limitations period.

It is well established under Massachusetts law that claims for breach of fiduciary duty are tort actions within the meaning of ch. 260, § 2A. See, e.g., O'Connor v. Redstone, 896 N.E.2d 595, 607 (Mass. 2008); Doe v. Harbor Sch., 843 N.E.2d 1058, 1065-66 (Mass. 2006); Lattuca v. Robsham, 812 N.E.2d 877, 884 (Mass. 2004); Patsos v. First Albany Corp., 741 N.E.2d 841, 846 n.6 (Mass. 2001); Demoulas v. Demoulas Super Mkts., Inc., 677 N.E.2d 159, 172-73 (Mass. 1997). None of those cases, however, involved a claim for breach of fiduciary duty to a public charity like NEMC.[1]

## II. Case law

The Attorney General argues that, under longstanding Massachusetts case law, claims for breach of fiduciary duty to a public charity are exempt from any limitations period. She derives that proposition from a line of cases, spanning more than a century, in which the Massachusetts Supreme Judicial Court has ruled that "no length ... of diversion from the plain provisions

---

[1] The only case that has applied the statute to such a claim appears to be an unpublished federal court decision. See Boston Children's Heart Found., Inc. v. Nadal-Ginard, No. 93-12539-REK, 1994 WL 16011252, at *33 (D. Mass. Dec. 15, 1994).

of a charitable foundation will prevent its restoration to its true purpose." Davenport v. Atty. Gen., 280 N.E.2d 193, 197 (Mass. 1972) (quoting Shattuck v. Wood Mem'l Home, Inc., 66 N.E.2d 568, 573 (Mass. 1946), which quoted Trs. of Andover Theological Seminary v. Visitors of Theological Inst. in Phillips Acad., 148 N.E. 900, 917 (Mass. 1925)); see also Atty. Gen. v. Old S. Soc'y, 95 Mass. 474, 495-96 (1866).

Those cases, like this one, involved claims that a public charity had been mismanaged by defendants who were acting in a fiduciary capacity. See Davenport, 280 N.E.2d at 197 (neglect of charity by trustees); Shattuck, 66 N.E.2d at 573 (unauthorized transfer of charity's assets to a separate corporation); Old S. Soc'y, 95 Mass. at 474 (commingling of charity's funds).[2]  In each case, the alleged mismanagement had occurred for many years, with the plaintiff's knowledge.  Nevertheless, the Supreme Judicial Court allowed the cases to go forward, without regard to any statute of limitations.  See Shattuck, 66 N.E.2d at 573 ("The lapse of many years is no bar to such action."); Old S. Soc'y, 95 Mass. at 495-96 ("the statute of limitations affords no absolute

---

[2]The other case, Andover Theological Seminary, is not as relevant.  There, the trustees of a theological institution argued that the "relax[ation] from strict adherence" to certain religious principles over time should "work something in the nature of an estoppel" against a claim that they were derogating from those principles.  148 N.E. at 917.  The court expressed no opinion on the legal merits of that estoppel argument, finding that it lacked factual support.  Id.

4

bar or limit" to a suit "requir[ing] the trustees of a charity to account for income which has not been applied according to the intentions of the donors").

Indeed, the Supreme Judicial Court granted or affirmed the relief that the plaintiffs requested in those cases, allowing assets to be returned to the public charity many years after their alleged misappropriation. See Davenport, 280 N.E.2d at 198 (ordering that wrongly transferred assets be returned to charity and that new trustees be appointed); Shattuck, 66 N.E.2d at 575 (affirming order that wrongly transferred assets be returned to charity and that an accounting be conducted); Old S. Soc'y, 95 Mass. at 496-87 (ordering return of commingled funds to charity). The Attorney General is seeking similar relief in this case, including the return of allegedly excessive management fees that Lifespan charged to NEMC during their affiliation.

This court agrees with the Attorney General that those cases establish, as a general rule of common law, that claims for mismanagement of a public charity by those acting in a fiduciary capacity are exempt from any limitations period under Massachusetts law. The Attorney General's claim against Lifespan falls squarely within that rule. Since the Supreme Judicial Court has applied that rule both before and since the enactment (in 1948) of the tort statute of limitations, that statute cannot be construed as implicitly overriding or limiting the rule, at

least as the Supreme Judicial Court sees it. Nor is there any indication in the statute that the Legislature intended it to have that effect.

### III. Lifespan's attempted distinctions

Despite the evident similarities between this case and the cases cited by the Attorney General, Lifespan argues that they are distinguishable on a number of grounds, including that this case (1) involves a charitable corporation, not a charitable trust; (2) involves a legal claim, not an equitable one; and (3) is more closely analogous to a different case from the Supreme Judicial Court, which suggests that the statute of limitations does apply to a claim for breach of trust to a quasi-public entity. See Atty. Gen. v. Trs. of Boston Elevated Rwy. Co., 67 N.E.2d 676 (Mass. 1946). This court will address each of those attempted distinctions in turn. As explained below, none of them withstands close scrutiny.

#### A. *Charitable corporation/trust distinction*

First, Lifespan argues that this case is distinguishable because NEMC is a charitable corporation, whereas those other cases involved mismanagement of charitable trusts. That is true as a factual matter, but this court is not persuaded that it has any legal significance (at least in this context). Charitable

6

corporations and trusts are both considered "public charities" under Massachusetts law and, as such, are subject to the Attorney General's supervisory authority. See Mass. Gen. L. ch. 12, §§ 8, 8E. While the two entities have different types of founding documents, "they are comparable in many respects." Mass. Charitable Mech. Ass'n v. Beede, 70 N.E.2d 825, 831 (Mass. 1947); see also, e.g., Mass. Gen. L. ch. 180, § 11A (treating charitable corporations like trusts during dissolution); Mass. Gen L. ch. 231, § 85K (capping tort liability of both charitable corporations and trusts).

The Supreme Judicial Court has refused to distinguish between charitable corporations and trusts with regard to the personal liability of their officers and trustees, concluding that such a distinction would be "illogical." Morrison v. Lennett, 616 N.E.2d 92, 96 (Mass. 1993). This court is not persuaded that it would be any more logical to distinguish between them with regard to the statute of limitations for breach of fiduciary duty claims (which often implicate the personal liability of officers and trustees). To the extent that the public policy favoring protection of charitable trusts outweighs the public policy of imposing time limits on liability, the same calculus would seem to apply to charitable corporations. Lifespan has not identified, nor has this court been able to find, any Massachusetts case that suggests otherwise.

### B. *Legal/equitable distinction*

Second, Lifespan argues that this case is distinguishable because the Attorney General's claim against Lifespan is a legal claim for breach of fiduciary duty, whereas the cases cited by the Attorney General involved equitable enforcement of trust instruments. But the "settled rule" in Massachusetts is that "jurisdiction over violations of fiduciary duty is equitable in character." Demoulas, 677 N.E.2d at 179 n.32. Indeed, the Supreme Judicial Court has called "breach of fiduciary duty ... an action which is equitable in nature." MacCormack v. Boston Edison Co., 672 N.E.2d 1, 4 n.5 (Mass. 1996). So the premise of Lifespan's attempted distinction between legal and equitable claims is incorrect.

In any event, the Supreme Judicial Court has made clear that it is the "essential nature" of the claim, not "the form of proceeding," that determines the applicability of a statute of limitations under Massachusetts law. Hendrickson v. Sears, 310 N.E.2d 131, 132 (Mass. 1974). As explained above, while the cases cited by the Attorney General may not have been formally styled as "breach of fiduciary duty" claims, they nonetheless alleged mismanagement of public charities by defendants acting in a fiduciary capacity, and they sought restoration of assets to the charity. Thus, whatever differences may have existed in "the form of proceeding," they had the same "essential nature" as the

Attorney General's breach of fiduciary duty claim against Lifespan.

### C. *Other precedent*

Third, Lifespan argues that this case is more closely analogous to <u>Boston Elevated Railway</u>, 67 N.E.2d at 676, where the Supreme Judicial Court stated that unauthorized expenditures by the trustees of a railway company (the predecessor to the Massachusetts Bay Transportation Authority) "would constitute a breach of trust, and proceedings brought to make good the loss caused by the breach are not barred by the statute of limitations if brought within the period prescribed by the statute after the Commonwealth knew or ought to have known of the breach." <u>Id.</u> at 694.  Lifespan interprets that language to mean that a claim for breach of fiduciary duty to a "quasi-public entity" is subject to a limitations period.

But Lifespan's use of the phrase "quasi-public entity" glosses over a key distinction between this case and <u>Boston Elevated Railway</u>, which is that the railway company was not a public charity like NEMC; it was a private trust.  The company was "quasi-public" only because it agreed, by contract, to operate its railway system for the benefit of the Commonwealth. In fact, the Attorney General's claim against the railway company was for breach of contract (not breach of trust) and thus clearly

9

was governed by the contract statute of limitations. It is not even clear if the Attorney General challenged that point, since the court concluded that the claim was brought within the limitations period. Id.

In any event, Boston Elevated Railway did not purport to overrule or limit the line of cases cited by the Attorney General, one of which was decided earlier that same year (Shattuck) and one of which was decided more than 25 years later (Davenport). Since those cases involved claims for mismanagement of a public charity by defendants acting in a fiduciary capacity, and since they directly addressed the applicability (or lack thereof) of statutes of limitations to such claims, they are the more analogous precedents.

**IV. Conclusion**

For the reasons set forth above, the Attorney General's motion for clarification or reconsideration[3] is GRANTED, and the portion of this court's summary judgment ruling that addressed Lifespan's limitations defense to the Attorney General's breach of fiduciary duty claim (specifically, the penultimate paragraph in Part III.B)[4] is VACATED. Lifespan's request for summary judgment on its limitations defense is denied not because of a

---

[3] Document no. 162.

[4] Document no. 161, at 16-17.

factual dispute over when the Attorney General's breach of fiduciary duty claim accrued, but because no such defense is available against that claim.

    **SO ORDERED.**

                                                          */s/ Joseph N. Laplante*
                                                       Joseph N. Laplante
                                                       United States District Judge
                                                       District of New Hampshire

Dated: September 20, 2010

cc: Deming E. Sherman, Esq.
    Bruce A. Singal, Esq.
    David A. Willin, Esq.
    Jeffrey T. Rotella, Esq.
    Michelle Peirce, Esq.
    Eric Carriker, Esq.
    Jonathan C. Green, Esq.
    Patrick J. Tarmey, Esq.