UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

<u>Lifespan Corporation</u>

v.

<u>New England Medical Center, Inc.,
now known as Tufts Medical Center
Parent, Inc., and New England
Medical Center Hospitals, Inc., now
known as Tufts Medical Center, Inc.</u>

and

<u>Martha Coakley, Attorney General for
the Commonwealth of Massachusetts,
Intervenor</u>

Civil No. 06-cv-421-JNL
Opinion No. 2011 DNH 133

## OPINION & ORDER

This case arises from a dispute between Lifespan Corporation, a non-profit healthcare system in Rhode Island, and New England Medical Center ("NEMC"), a non-profit hospital in Massachusetts, over their brief and unsuccessful affiliation. This court recently issued findings of fact and rulings of law after a bench trial, awarding about $14 million to Lifespan on its claim against NEMC for breach of their disaffiliation agreement and also awarding about $14 million to NEMC and the Massachusetts Attorney General (who had intervened pursuant to her supervisory authority over that state's public charities) on their counterclaims against Lifespan for indemnification and breach of fiduciary duty, respectively. See <u>Lifespan Corp. v. New Eng. Med. Ctr., Inc.</u>, --- F. Supp. 2d ----, 2011 U.S. Dist. LEXIS 56525, 2011 WL 2134286 (D.R.I. May 24, 2011) ("Findings &

Rulings"). Judgment then entered accordingly. See document no. 224. Both sides have now moved to alter or amend the judgment in various respects. See Fed. R. Civ. P. 52(b), 59(e). This court rules on their motions as set forth below.

I. **Amount of damages**

Lifespan has moved to amend the judgment to reduce the amount of damages it owes for failing to negotiate inflationary increases in the reimbursement rates paid to NEMC by health insurers Cigna and United from 2000 to 2002. See Findings & Rulings at ¶¶ 99-102, appendix. The issue in dispute is which inflation rate should be used to calculate the damages for the first of those three years (2000). This court used "the total, compounded inflation [rate] for 1998 and 1999," because "the United and Cigna contracts had not been negotiated since 1997," when Lifespan first assumed responsibility for overseeing NEMC's payor contracts. Id. at appendix n.**.

Lifespan argues that this court should have used only the 1999 inflation rate. But this court stands by its earlier ruling. Had Lifespan negotiated inflationary increases in the Cigna and United reimbursement rates for 2000, those increases would not have accounted solely for the previous year's inflation; they would have and should have accounted for all of

the inflation since the reimbursement rates were last negotiated in 1997.

Contrary to what Lifespan argues, using the compounded 1998/1999 inflation rate to calculate the damages for 2000 is not the same thing as imposing damages against Lifespan for failing to negotiate inflationary increases for 1999 (the year before this court found it should have, see Findings & Rulings at n.17). No damages have been awarded for 1999. This court's damages calculation is based on the assumption that the reimbursement rates paid by Cigna and United would have stayed at the static 1997 level through the end of 1999. By that point, however, Lifespan could have and should have negotiated inflationary increases for 2000 to account for the intervening inflation in 1998 and 1999, bringing the reimbursement rates back to the inflation-adjusted 1997 level. Lifespan's request to reduce the amount of damages it owes is denied.

## II.  Prejudgment interest

Both sides have moved to alter or amend the judgment to include prejudgment interest. NEMC and the Massachusetts Attorney General argue that interest should be awarded on everyone's damages. Lifespan, hoping for the best of both worlds, argues that interest should be awarded only on its damages, not NEMC's. Both sides agree that Rhode Island law

3

governs whether and how much prejudgment interest to award. <u>See</u>, e.g., <u>R.I. Charities Trust v. Engelhard Corp.</u>, 267 F.3d 3, 8 (1st Cir. 2001) (explaining that Rhode Island law on prejudgment interest governs in federal diversity cases brought in that forum, "even where [as here] the dispute is controlled by the substantive law of another state"). This court will analyze each issue in turn.

### A. *Whether to award interest*

Rhode Island has a prejudgment interest statute that provides in relevant part:

> In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein.

R.I. Gen. Laws § 9-21-10. "The dual purpose of prejudgment interest" under that statute, according to the Rhode Island Supreme Court, "is to encourage early settlement of claims and to compensate an injured plaintiff for delay in receiving compensation to which he or she may be entitled." <u>Metro. Prop. & Cas. Ins. Co. v. Barry</u>, 892 A.2d 915, 919 (R.I. 2006) (citing <u>Martin v. Lumberman's Mut. Cas. Co.</u>, 559 A.2d 1028, 1031 (R.I. 1989)).

The Rhode Island Supreme Court "has long held that the awarding of [prejudgment] interest is a ministerial act for the clerk of the court, not an issue to be decided by the court." Cardi Corp. v. State, 561 A.2d 384, 387 (R.I. 1989) (citing a line of cases that began with Kastal v. Hickory House, Inc., 187 A.2d 262, 264 (R.I. 1963)). In other words, "once the claim for damages has been duly reduced to judgment the addition of interest is peremptory" and "automatically awarded." Id. The rationale behind this approach is that the statute "speaks imperatively and directly not to the court but to the clerk," admitting of "no conditions or reservations," and it "is not the court's business" when confronted with "a statute so clear and unambiguous" to "read[] into [it] something contrary to its unequivocal language," regardless of whether it "comports with [the court's] ideas of justice, expediency or sound public policy." Kastal, 187 A.2d at 264-65.

There has been one case, however, where the Rhode Island Supreme Court concluded that an award of prejudgment interest "would be inappropriate" for a plaintiff who had rejected an early settlement offer equal to her ultimate recovery, because such an award "would promote neither of the purposes of § 9-21-10." Martin, 559 A.2d at 1031. Several courts have interpreted Martin to mean that "under Rhode Island law, a court may choose not to follow the statutory mandate if the award of interest, in

light of the facts of the case, does not further policy goals." Fratus v. Rep. W. Ins. Co., 147 F.3d 25, 31 (1st Cir. 1998); see also Buckley v. Brown Plastics Mach., LLC, 368 F. Supp. 2d 167, 169-70 (D.R.I. 2005); Commercial Assocs. v. Tilcon Gammino, Inc., 801 F. Supp. 939, 942-43 (D.R.I. 1992), aff'd, 998 F.2d 1092 (1st Cir. 1993); DeCesare v. Lincoln Benefit Life Co., No. PB-99/2048, 2005 WL 372300, at *2, 2005 R.I. Super. LEXIS 25, at *5-6 (R.I. Super. Ct. Jan. 13, 2005) (unpublished).

Even if, despite the clear language of § 9-21-10 (which this court regards as unambiguous), courts have discretion not to award prejudgment interest on equitable grounds, this court would nevertheless award it here, because doing so promotes both of the statutory purposes. First, such an award would help to "encourage early settlement of claims." Barry, 892 A.2d at 919. Early settlement would have been particularly welcome here, because it would have kept Lifespan and NEMC--two non-profit organizations with similar missions to provide health care to the people of New England--from diverting resources away from that mission to pay for their attorneys and other litigation expenses. Lifespan argues that NEMC made early settlement impossible by hurling a "kitchen sink of hyperbolic accusations," which made Lifespan's liability "totally unknowable and not predictable." But that is itself hyperbole. While NEMC's broader theories of liability proved unsuccessful, see, e.g., Findings & Rulings at

¶¶ 106, 178, and 199, Lifespan was held liable for particular conduct, relating to NEMC's payor contracts and an interest rate swap transaction, that even its own executives acknowledged was hard to justify, see id. at ¶¶ 76, 117. That liability was hardly "unknowable" or "unpredictable." Moreover, cases settle all the time with uncertain liability.

Second, an award of prejudgment interest will "compensate [both sides] for delay in receiving compensation to which [they were] entitled." Barry, 892 A.2d at 919. NEMC, in particular, has waited about a decade to be compensated for Lifespan's misconduct during their affiliation. Lifespan argues that NEMC essentially compensated itself by withholding (or, as Lifespan puts it, "holding hostage") payments due Lifespan under the affiliation agreement, which roughly equaled the amount of Lifespan's liability. See Findings & Rulings at ¶¶ 16, 49-55. But NEMC withheld those payments only from 2006 to 2008 (the last payment in 2008 was by far the largest), whereas its damages were incurred from 2000 to 2002, meaning that NEMC still waited about half a decade before being compensated.[1] An award of interest would compensate it for that delay. See, e.g., Fratus, 147 F.3d at 31 (affirming award of interest where plaintiffs had "been

---

[1] Moreover, Lifespan will be awarded interest to compensate it for the delay in receiving those payments. See Part II.B, infra.

forced to wait many years for the money to which they were unquestionably entitled").

Lifespan also argues that the Massachusetts Attorney General caused some of the delay by waiting years to intervene in this case. But Lifespan has not shown that the Attorney General's delay in intervening was unreasonable. See Findings & Rulings at n.4 (rejecting Lifespan's laches defense to the Attorney General's claims); Lifespan Corp. v. New Eng. Med. Ctr., Inc., No. 06-421, 2010 WL 3718952 (D.R.I. Sept. 20, 2010) (rejecting Lifespan's statute of limitations defense). Moreover, there is no reason to believe that the litigation or settlement discussions would have taken a materially different course if the Attorney General had intervened earlier. So, even assuming arguendo that unreasonable and prejudicial delay by the plaintiff could be a permissible basis for denying prejudgment interest under Rhode Island law, but see Roy v. Star Chopper Co., 584 F.2d 1124, 1135-36 (1st Cir. 1978) (noting that, under Kastal, 187 A.2d at 265, "possible prejudice resulting from a dilatory plaintiff was not a reason" to deny interest), no such delay occurred here.

### B. *Amount of interest award*

There is still the question of when interest began accruing on each side's damages. The statute provides that interest must

be calculated "from the date the cause of action accrued." R.I. Gen. Laws § 9-21-10. Both sides agree that Lifespan's claim for breach of contract accrued on the dates when NEMC failed to make payments that the contract required:

- January 2, 2006 for the first withheld payment of $1,830,000;

- January 2, 2007 for the second withheld payment of $1,830,000; and

- March 25, 2008 for Lifespan's $10,243,948 share of the Medicare recovery that NEMC received on that date.

See Findings & Rulings at ¶¶ 49-55. So Lifespan is entitled to prejudgment interest on each of those amounts from the date of accrual to the date of the amended judgment, at the statutory rate of 12 percent per year. See Part V, infra (ordering the clerk to amend the judgment to include that award of prejudgment interest).

The parties disagree over when NEMC's indemnification claim and the Massachusetts Attorney General's claim for breach of fiduciary duty accrued. Lifespan argues that this court should use the date when they filed suit as the accrual date because it is unclear precisely when NEMC and the Attorney General incurred those damages. But the opposite is true. This court specifically found that NEMC and the Attorney General's damages accrued on the following dates:

- $8,318,791 in damages for Lifespan's misconduct in connection with an interest rate swap transaction accrued on November 1, 2002, when NEMC terminated the swap transaction

9

and refinanced its bonds, see Findings & Rulings at ¶¶ 130-31, 144, 148, 155;[2]

- $699,057 in damages for Lifespan's failure to negotiate inflationary increases in Cigna's reimbursement rates were incurred during the year 2000, see id. at appendix, such that December 31, 2000 is the proper accrual date;

- $490,135 in damages for Lifespan's failure to negotiate inflationary increases in United's reimbursement rates were incurred during the year 2000, see id., such that December 31, 2000 is the proper accrual date;

- $1,046,450 in damages for Lifespan's failure to negotiate inflationary increases in Cigna's reimbursement rates were incurred during the year 2001, see id., such that December 31, 2001 is the proper accrual date;

- $892,593 in damages for Lifespan's failure to negotiate inflationary increases in United's reimbursement rates were incurred during the year 2001, see id., such that December 31, 2001 is the proper accrual date;

- $1,413,297 in damages for Lifespan's failure to negotiate inflationary increases in Cigna's reimbursement rates were incurred during the year 2002, see id., such that December 31, 2002 is the proper accrual date; and

---

[2] Lifespan argues that the swap damages were not truly realized on November 1, 2002, because those damages reflect "present value savings" that NEMC lost as of November 1, 2002, id. at ¶ 131, meaning that NEMC's "actual damages would not occur until the bonds [were] being paid down, on dates following [November 1, 2002] and into the future." But it is well established under Rhode Island law that prejudgment interest can be "properly assessed on all future damages awarded to plaintiff," including "present value" damages of the sort awarded here. La Plante v. Am. Honda Motor Co., 27 F.3d 731, 744 (1st Cir. 1994) (citing Pray v. Narragansett Improvement Co., 434 A.2d 923, 930-31 (R.I. 1981)); see also Barbato v. Paul Revere Life Ins. Co., 794 A.2d 470, 472-73 (R.I. 2002) (suggesting, in a case where the defendant was held liable for failing to make a series of monthly payments, that "the better method . . . is to discount the payments to their [present] value on the date the damages first began to accrue, and then to apply the prejudgment interest rate to the total sum of the discounted monthly payments").

- $1,316,381 in damages for Lifespan's failure to negotiate inflationary increases in United's reimbursement rates were incurred during the year 2002, see id., such that December 31, 2002 is the proper accrual date.

So NEMC and the Attorney General are entitled to prejudgment interest on each of those amounts from the date of accrual to the date of the amended judgment, at the statutory rate of 12 percent per year. See Part V, infra (ordering the clerk to amend the judgment to include those awards).

Lifespan argues, in the alternative, that this court should use the date of the disaffiliation agreement as the accrual date for NEMC's damages, because NEMC's claims were based on the indemnification provision in that agreement and thus could not have been asserted any earlier. But the agreement essentially just transformed NEMC's pre-existing claims against Lifespan for breach of fiduciary duty (which, as the Massachusetts Attorney General's recovery shows, were meritorious) into parallel claims for indemnification. See id. at ¶¶ 36-48; Lifespan Corp. v. New Eng. Med. Ctr., Inc., 731 F. Supp. 2d 232, 243 (D.R.I. 2010) ("NEMC, while agreeing to the release [of its tort claims], effectively hedged its risk by negotiating a broad indemnification provision to protect itself against losses caused by Lifespan's misrepresentations, willful misconduct, or gross negligence"). It would be unjust, and inconsistent with the parties' agreement, to treat that switch from tort claims to

11

indemnification claims as cutting off NEMC's right to interest accrued before the agreement.

Moreover, even if NEMC's interest award were confined to the post-agreement period, the Massachusetts Attorney General's award would not be. She was not a party to the agreement; her claims were for breach of fiduciary duty, not indemnification. Lifespan argues that her interest award should instead be confined to the period after her intervention in this case, because she unreasonably delayed in intervening. But this court has already rejected that argument as a basis for denying interest, see Part II.A, supra, and likewise rejects it as a basis for reducing the amount of such interest.[3]

### III. Attorneys' fees

NEMC has moved for an award of attorneys' fees in the amount of $1,152,215 and non-taxable expenses in the amount of $43,929.62, see Fed. R. Civ. P. 54(d)(2), arguing that it is contractually entitled to such an award under the indemnification provision in the disaffiliation agreement. Specifically, NEMC

---

[3]Lifespan also argues that the Attorney General's accrual date should trump NEMC's accrual date because breach of fiduciary duty "was the primary cause of action asserted against it." But the fiduciary duty and indemnification claims were on equal footing; neither was "primary" over the other (if that even matters). And, in any event, they accrued at the same time, as explained supra.

argues that fees and non-taxable expenses incurred in proving its indemnification claim against Lifespan constitute further covered "losses" that Lifespan also must indemnify. Lifespan argues, in response, that it is too late for NEMC to seek fees and expenses under the indemnification provision, because NEMC failed to provide pretrial notice of its intent to do so and then failed to present evidence of its fees and expenses at trial.[4] Lifespan also contests NEMC's interpretation of the indemnification provision as covering attorneys' fees and expenses.

Rule 54(d)(2)(A) provides that a claim for attorneys' fees and non-taxable expenses may be made by postjudgment motion "unless the substantive law requires those fees to be proved at trial as an element of damages." One such situation where the rule "does not . . . apply"--and the exception does--is when fees are "sought under the terms of a contract." Fed. R. Civ. P. 54(d)(2)(A), advisory committee notes (1993). In evaluating contractual fee claims, however, "courts have differentiated between claims for attorney's fees based on 'prevailing party' contractual provisions," which generally may be raised in a postjudgment motion (because only then can the prevailing party be determined), "and claims for attorney's fees based on other

---

[4] If it is not too late, then Lifespan argues that it, too, should be allowed to seek indemnification of fees and expenses (notwithstanding its equal failure to provide notice or evidence of such a claim), because it prevailed on many issues.

types of contractual provisions," which generally must be proved at trial. Rockland Trust Co. v. Computer Associated Int'l, Inc., No. 95-11683, 2008 WL 3824791, *5 (D. Mass. Aug. 1, 2008) (citing Pride Hyundai, Inc. v. Chrysler Fin. Co., 355 F. Supp. 2d 600, 603 (D.R.I. 2005)).

The contractual provision on which NEMC is relying here is not a "prevailing party" provision (and, even if it were, this court has already ruled that "neither side has a significantly stronger claim to the title of prevailing party," because "the case essentially resulted in a tie," document no. 237, at 2). Rather, it is an indemnification provision that requires Lifespan to indemnify NEMC for certain losses caused by its misrepresentations, willful misconduct, or gross negligence. Courts have generally concluded that an "indemnification clause provide[s] for attorney's fees as an element of damages," which means that claims for indemnification of fees and expenses must be proved at trial, not by way of a postjudgment motion. Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc., 446 F. Supp. 2d 551, 578 (E.D. Va. 2006) (citing Pride Hyundai, 355 F. Supp. 2d at 603).[5] Whether or not that reasoning applies in every case,

---

[5] See also, e.g., Callaway v. Wiltel Commc'ns, LLC, No. 06-0579, 2007 WL 2902878, at *7 (N.D. Okla. Oct. 2, 2007); Fed. Agric. Mortg. Corp. v. It's a Jungle Out There, Inc., No. 03-3721, 2006 WL 1305212, at *1-3 (N.D. Cal. May 9, 2006) (citing Carolina Power & Light Co. v. Dynegy Mktg. & Trade, 415 F.3d 354 (4th Cir. 2005)); Phillips v. Grendahl, No. 00-1382, 2001 WL 1110370, at *2 (D. Minn. Sept. 19, 2001); Schlerman v. Kansas

it is apt here, where NEMC's claim for fees and expenses is based on the same indemnification provision that governed each of the claims on which this court awarded damages to NEMC following trial. See Findings & Rulings at ¶¶ 36-48, 103-107, 145-155, 178, and 199.

NEMC never attempted at trial to prove its claim for indemnification of fees and expenses. Indeed, NEMC never even mentioned fees and expenses in the "damages" section of its pre-trial statement, see document no. 171, at 23-25, its proposed findings and rulings, see documents no. 171-3 and 221, or its post-trial brief, see document no. 210. Moreover, while NEMC's pleadings did request that this court award "costs and expenses in this Action, including attorneys' fees," document no. 102, at 27, NEMC never specifically notified Lifespan--in its pleadings or other prejudgment filings--that it intended to seek fees and expenses under the indemnification provision, as opposed to seeking them on some other basis (such as Mass. Gen. L. ch. 93A, § 11, which NEMC expressly invoked in its pleadings as a basis for fees, see document no. 102, at 27). So NEMC's postjudgment claim for indemnification of fees and expenses, in addition to

---

City Aviation Ctr., Inc., No. 92-2211, 1994 WL 675323, at *3 (D. Kan. Nov. 17, 1994) (citing Stuart M. Speiser, Attorneys' Fees § 13.7, at 628 (1973)).

15

being an inefficient use of the judicial process, came as an unfair surprise to Lifespan.[6]

"The award of attorneys' fees in such a situation can . . . be denied completely due to a failure on the part of the party seeking them to carry its burden of proof at trial." Pride Hyundai, 355 F. Supp. 2d at 603. This court regards that result as fair and appropriate under the particular circumstances of this case. NEMC "had its opportunity under Rule 54 to prove its attorney's fees at trial" and thereby save judicial and party resources--or, at the very least, to provide specific notice of its claim for indemnification of fees and expenses and to seek either Lifespan's agreement[7] or this court's permission to litigate the matter postjudgment--"and chose not to do so." Kraft Foods, 446 F. Supp. 2d at 578. As a result, NEMC "has lost its opportunity to prove its entitlement to attorney's fees, and none will be awarded." Id.

---

[6]Again, Lifespan contests NEMC's interpretation of the indemnification provision as covering fees and expenses. This court need not reach that argument, in light of its ruling that NEMC cannot recover fees and expenses under Rule 54(d)(2) anyway.

[7]Cf., e.g., Crowe v. Bolduc, 365 F.3d 86, 97 n.7 (1st Cir. 2004) (declining to consider whether a postjudgment motion for indemnification of attorneys' fees was timely because "the timing of the motion was dictated by the terms of an agreement between the parties").

## IV. Expert fees

NEMC has also moved for an award of expert fees in the amount of $366,131.50, see Fed. R. Civ. P. 54(d)(2), arguing that the disaffiliation agreement entitles it to indemnification for those expenses as well. This court rejects that argument for the reasons just discussed in Part III, supra.[8] It is worth noting, moreover, that very little of NEMC's expert testimony actually contributed to its recovery under the indemnification provision. See, e.g., margin order dated May 26, 2011 (noting that this court "has not assessed any liability to Lifespan" based on one expert's testimony). Indeed, much of that testimony was rejected as unpersuasive. See, e.g., Findings & Rulings at ¶¶ 59, 67, 70, 78-79, 83, 188, 190, nn.11, 16, 18. So, even if an award of expert fees were otherwise appropriate, this court cannot discern (nor has NEMC provided) any meaningful and reliable way of calculating the small fraction of the experts' work that might be worthy of compensation under the indemnification provision.

In the alternative, NEMC argues that it is at least entitled to reimbursement of $31,150 in expenses that it incurred in connection with depositions of its experts. See Fed. R. Civ. P. 26(b)(4)(E) ("Unless manifest injustice would result, the court

---

[8]To the extent that NEMC is seeking those fees as taxable costs, this court rejects its argument for the reasons discussed in its earlier ruling that "each party shall bear its own costs." Document no. 237, at 2.

17

must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A)," which authorizes expert depositions). But, setting aside whether NEMC would be entitled to such expenses under Rule 26(b)(4)(E), or whether it would be just to award them to NEMC but not to Lifespan, courts have discretion to reject such a request if it "is not brought within a reasonable time." 6 James Wm. Moore et al., Moore's Federal Practice § 26.80[3][c], at 26-487 (3d ed. 2010) (citing cases). NEMC's postjudgment request for discovery-related expenses incurred about three years ago, see document no. 226, at 27-30 (indicating that NEMC's experts were deposed in June 2008), is unreasonably late and therefore denied.

Finally, NEMC argues that this court, pursuant to its "inherent equitable authority" to prevent abuse of the judicial process, should award $87,681 as reimbursement for the expert fees that NEMC paid to antitrust expert Mark Botti, whose testimony became unnecessary after Lifespan, midway through trial, abandoned its argument that antitrust law precluded it from negotiating payor contracts jointly on behalf of NEMC and its physician groups. See Findings & Rulings at ¶ 87 ("Lifespan likely could have forced NEMC's physician groups to negotiate jointly with the hospital"). NEMC argues that Lifespan knew or should have known that fact witnesses would offer other

18

explanations for the lack of joint negotiations, obviating the need for testimony by antitrust experts. But this court does not find that Lifespan abused the judicial process or otherwise acted improperly. Lifespan, too, invested resources in the antitrust argument, but (commendably) abandoned it when trial testimony pointed in a different direction. It is worth noting, moreover, that even with the antitrust argument out of the way, NEMC failed to prove that Lifespan was liable for failing to negotiate on behalf of NEMC's physician groups. See id. at ¶¶ 97, 106.

## V. Conclusion

For the reasons set forth above, the parties' respective motions to alter or amend the judgment[9] are DENIED, except to the extent that they seek prejudgment interest on their respective damages, which is GRANTED to all parties. The clerk shall amend the judgment to include awards of prejudgment interest, as set forth in Part II.B, supra.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Dated: August 26, 2011

---

[9]Documents no. 228, 229, 232, and 239.

19

cc:  Deming E. Sherman, Esq.
     Patricia A. Sullivan, Esq.
     Rachel K. Caldwell, Esq.
     Bruce A. Singal, Esq.
     David A. Wollin, Esq.
     Jeffrey T. Rotella, Esq.
     Michelle Peirce, Esq.
     Eric Carriker, Esq.
     Jonathan C. Green, Esq.
     Patrick J. Tarmey, Esq.